CHARLES G. LORING & another *vs.* JOHN S. BLAKE & others.

A testatrix by her will gave her own property, and appointed other property by virtue of a power in her deceased husband's will, equally among her children; directed that no child should be charged with any money advanced on its account, unless the same was charged in a memorandum filed with her will; and acquitted each of her children from all debts due her or her husband's estate, unless charged in such memorandum. After making the will, she gave a sum to one of her daughters, who signed a receipt therefor stating that the sum was to be deducted from out of the estate of her father which was coming to her. This receipt was deposited by the business agent of the testatrix in a trunk devoted exclusively to papers concerning the property of the testatrix, (including her will,) and her husband's estate, but was not otherwise connected with the will. *Held*, that the receipt was not such a memorandum as was contemplated by the will, and the sum advanced was not to be deducted from the daughter's share.

BILL OF INTERPLEADER filed by Charles G. Loring and Caleb W. Loring as trustees under the last will of Joshua Blake, and by Caleb W. Loring as executor of the will of Sally Blake, widow of Joshua Blake. The case, as it appeared from the bill, answers and a statement of facts, on which it was reserved by *Wells*, J., for the consideration of the full court, was as follows:

Joshua Blake, who died in 1844, by his will provided that the residue of his estate should be held by trustees in trust, to pay the income to his widow; to transfer to any of his children at any time during her life such part or sum as she should, by a writing attested by two witnesses, appoint; and upon her death to transfer the principal to and among his children, as she should by will appoint.

During the life of Mrs. Blake, her average annual income from her husband's estate was about $28,000, and that from her own

property was about $3000. She had several children, issue of her said marriage, and a large part of her income was expended by her for their benefit, or for the benefit of such of them as stood in need thereof, impartially, according to their circumstances.

One of these children was Mary S. B. Clarke, whose husband died in 1858. Before his death, she had no need of pecuniary assistance from her mother, and received nothing beyond ordinary presents; but after her husband's death she received $3000 or $4000 from her mother.

In 1859 Mrs. Blake made her will, in which, after giving her property to her children and their issue, by right of representation, in equal shares, and appointing to them in equal shares her husband's estate, she by the fifth article provided as follows: "It is my will, and I hereby direct, that no child, nor the issue of any, shall be charged with any sum or sums of money paid or advanced on his or her account, or on account of its parent, whether by me or by my late husband, unless the same be charged in a memorandum filed with this will; and I hereby release and acquit each and every of them from all debts or dues owing to me or my said husband's estate, unless charged in such memorandum; it being my intention that all the estates of which I am or may be possessed, and also all the estates of my late husband over which I have the power of appointment, shall, at my decease, be equally divided among all his and my children, and the issue of any deceased child or children, in the manner hereinbefore provided, excepting such charges as may be made by me and filed with this will as aforesaid."

Some time after the making of Mrs. Blake's will, Mrs. Clarke applied to her for $5000, which she needed to finish and furnish a house. Thaddeus Nichols, who was then a trustee under Joshua Blake's will, and the business agent and adviser of Mrs. Blake, was disinclined to let Mrs. Clarke have the money, but yielded at the request of Mrs. Blake. There was a conference of the trustees under Joshua Blake's will, about the payment; Nichols saw Mrs. Blake about the subject, and afterwards called on Caleb W. Loring, then as now one of the trustees, and asked him to write a receipt; Loring objected to writing it without seeing the

will, to which Nichols replied that he could not wait to get the will, even if the receipt did not conform to it, and that sending the money would prevent Mrs. Clarke's calling for more; and Loring then wrote this receipt: "I, Mary S. B. Clarke, do hereby acknowledge and make known, that I have, this twenty ninth day of January 1863, received the sum of five thousand dollars from my mother, Sally Blake, which said sum is to be deducted from out of the estate of my father, Joshua Blake, which is coming to me."

Nichols sent to Mrs. Clarke $5000 out of the income of Joshua Blake's estate, and made this entry on the account book of the trustees, which he kept: "By cash remitted Mary S. B. Clarke, to be deducted from her share of her father's estate, $5000." He also sent her the receipt, which she signed and returned to him, and which he put in a trunk, kept by him in a bank, and devoted exclusively to the papers belonging to the estate of Joshua and Mrs. Blake, where it was found by the executor of Mrs. Blake's will, after her death, with her will and the other papers relating to the estates of herself and her husband. There was no mark on the receipt to indicate that it was intended to be filed as a memorandum with the will, nor was it annexed to the will or folded with it, or connected with it in any manner except by being in the same trunk. There was no written appointment by Mrs. Blake of $5000.

The prayer of the bill was, that Mrs. Clarke and the other parties in interest might interplead as to whether her share in either of the testamentary estates was chargeable with the $5000 and for a decree to determine that question.

*E. R. Hoar*, for Mrs. Clarke.

*W. Allen & F. O. Prince*, for the other defendants.

AMES, J. The direction contained in the fifth clause of Mrs Blake's will, in relation to the release of all claims against any of the children or grandchildren for advances, manifestly refers to a memorandum which she herself was to prepare and leave with the will for the information and guidance of the executors. Her general purpose, as explained in the same clause, was that all the estate should be equally divided "in the manner provided" in the

will, among the children and grandchildren, " excepting such charges as may be made by me (the testatrix) and filed with this will as aforesaid." It must be inferred that she had made such advances, and probably expected to continue to do so, and that the memorandum spoken of in this clause might become necessary for the purpose of preventing any inequality in the distribution of the estate. The memorandum, by the terms of the will, is made subordinate and auxiliary to her declared intent of an equal division, and this was its only office. This purpose did not require a general account, in which each child or grandchild should be charged with each advance which he or she should have received. There was no occasion for a list of items. If she left no memorandum of the kind, filed with the will, the inference might properly be, that there had been no inequality arising from advances made in her lifetime, which she deemed it material to correct, or at any rate that there were no charges which she saw fit to make.

The receipt signed by Mrs. Clarke is in no sense the kind of memorandum contemplated by the will. It is not a charge made by the testatrix, and there is no evidence that she intended to file it with the will, or that it was in fact so filed. There is no reference in it to the will, and no apparent connection with it. The case therefore wholly fails to show any intent on the part of the testatrix to charge her daughter with the amount, and what she did not so charge must be considered as released in express terms by the will. *Decree accordingly.*