MARKS BERWIN, administrator, *vs.* JOSEPH M. LEVENSON
& others.

Suffolk.   November 12, 1941. — March 31, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Contract*, What constitutes, Account stated.  *Evidence*, Declaration of
deceased person, Admitted without objection, Relevancy and ma-
teriality.  *Practice, Civil*, Variance.  *Limitations, Statute of*.

Statements in writing, made by a creditor upon his personal knowledge,
in good faith and before the commencement of an action against his
alleged debtor, to the effect that it was "mutually understood and
agreed" between them that a certain amount was due him, were
essentially statements, and not mere conclusions, of fact and after
his death were competent evidence in such action under G. L. (Ter.
Ed.) c. 233, § 65.
A statement in writing by a creditor that "by mutual agreement with"
his debtor a certain sum was "the amount due" him, after the credi-
tor's death was competent evidence under G. L. (Ter. Ed.) c. 233,
§ 65, upon proper preliminary findings by the trial judge, although in
the same statement it was said that a part of the sum mentioned "is
a moral obligation."
No reversible error appeared, at the trial after the death of a creditor
of an action upon an account stated, in the admission in evidence of
entries in a diary, on slips of paper and in a day book in an abbre-
viated and fragmentary form and pertaining to transactions between
the parties before the time of their alleged accounting together, where
the judge instructed the jury that the entries were competent "purely
as a background" and as bearing upon whether there was "reason
for an accounting," but "not as to the truth of any figure there."
An exception to the denial of a motion, made at the conclusion of the
direct examination of a witness, to strike out testimony of the wit-
ness to which no objection previously had been made, must be over-
ruled.
Evidence that there had been transactions between an alleged creditor
and three debtors as a result of which monetary charges and credits
had arisen between them and a balance was due the creditor; and
that the creditor and the debtors had agreed to the amount of the
balance due, warranted a finding of an account stated in the agreed
sum between the parties.
It is not necessary to the finding of an account stated that there be
items of charge by each party which can be set off; the items may
be all by one party against the other.
Under G. L. (Ter. Ed.) c. 260, § 14, an indebtedness underlying an

account stated was revived as against the statute of limitations by a part payment by the debtor within six years before the commencement of an action upon the account stated, and the action was not barred although there was no writing signed by the debtor evidencing the account stated; § 13 of c. 260 was not applicable.

A motion for the ordering of a verdict for the defendant with a reference to the pleadings in an action upon an account stated where specifications had been filed by the plaintiff in a separate document after the filing of the declaration was not enough without more to. call to the attention of the trial judge a variance between the specified particulars and the evidence.

In an action upon an account stated, refusal to give in terms a requested ruling as to the necessity of a preëxisting indebtedness between the parties disclosed no error in view of the instructions given to that effect.

An account stated may be based upon a single item of actual indebtedness.

A finding for the plaintiff upon an account stated was warranted although some of the items entering into the account were originally debts of a third party, where there was evidence that the defendant legally had assumed such debts before the account was stated.

CONTRACT. Writ in the Superior Court dated May 24, 1937.

The case was tried before *Brogna*, J. There was a verdict for the plaintiff in the sum of $14,500. The defendants alleged exceptions.

*H. Bergson*, (*P. Bergson & H. C. Kagan* with him,) for the defendants.

*L. Brown*, (*W. J. Barry & R. H. Field* with him,) for the plaintiff.

QUA, J. The plaintiff, as administrator of the estate of William Berwin, declared against three defendants, Joseph M. Levenson, Max L. Levenson, and Nathan Thomson, for the sum of $12,750 found due by the parties upon an accounting together on June 9, 1931, with interest. A bill of particulars filed by the plaintiff indicates that charges entering into the alleged account stated arose out of negotiations with the United States government, securing the purchase of surplus war materials "in accordance with the instructions of the defendants, on and after" a great many dates in the years 1926, 1927, 1928, and 1929.

The defendant Thomson died during the pendency of the action, and the bill of exceptions states that the action pro-

ceeded "by force of" G. L. (Ter. Ed.) c. 228, § 7, against the remaining defendants, the two Levensons.

Much of the evidence consisted of declarations in writing by the plaintiff's intestate admitted by the judge under G. L. (Ter. Ed.) c. 233, § 65, as declarations of a deceased person made in good faith before the commencement of the action upon the personal knowledge of the declarant. Oral declarations of the intestate and of the deceased defendant Thomson were also admitted under the statute. It appears from the bill of exceptions that the judge made the required preliminary investigation as to knowledge and good faith of the declarants and as to the declarations being made before the commencement of the action. The competency of this evidence is challenged by the surviving defendants.

Exhibit 1 was "on the letterhead" of the plaintiff's intestate. It was dated August 1, 1932, and was signed by the intestate. The part that was read to the jury was as follows: "On June 9, 1931, I called at the office of Levenson & Levenson, in the Old South Building. I talked with Joseph M. Levenson relative to the amount due me on that date by said Levenson and Thomson and M. L. Levenson. They all three assumed the obligation of Thomson & Kelley Company and the International Linter Company, and we had an understanding with them some time previous as to the amount agreed in settlement, and the purpose of my talk on June 9, 1931, was to ascertain the amount due me on that date, as payments had been made to me previously on account of the original settlement. It was mutually understood and agreed that $12,750 was the amount due me on June 9, 1931. J. M. Levenson agreed to pay me in full by October 15, 1931. Since October 3, 1931, I have received on account $1,100, leaving amount due me this day $11,650 less $100 paid me July 11, 1932 by N. Thomson, leaving amount due me this day $11,550. I have received check from N. Thomson from time to time in payment of expenses received for traveling and so forth, but no payment has been paid to me on the principal other than the amounts stated above. I have no written evidence

of the amount due me by N. Thomson, J. M. Levenson and M. L. Levenson. I have tried to get something in writing but they have always given some excuse for not giving it to me although verbally they have not denied the obligation." This was signed by the plaintiff's intestate, William Berwin. Below the signature was written, "Due me June 16, 1933, $9,788.68, William Berwin."

It was agreed at the trial that the three original defendants were the principal officers and directors of the two corporations named in this exhibit and that one of the corporations was dissolved in 1928 and the other enjoined from doing business in April, 1931.

There was no error in admitting this exhibit under the statute. The objection urged to its admissibility as distinguished from its bearing and effect is that it contains conclusions and is not limited to statements of fact. But essentially the statements could be found to be statements of fact. The statute has always been liberally construed as remedial legislation designed to mitigate under proper safeguards the hardship often resulting from the loss of evidence by reason of death. In the recent case of *Kulchinsky* v. *Segal*, 307 Mass. 571, evidence of declarations of the plaintiff's intestate "that the defendant owed him more than $500, had paid $5 on account, and had promised to pay by instalments" was held competent. In that decision the underlying principles were fully discussed, with the citation of many illustrations. The parts of Exhibit 1 previously quoted, in so far as they were of any consequence, were properly admitted under the authority of that case.

This entry from a diary of the plaintiff's intestate was admitted, "Boston, June 9, 1931. By mutual agreement with M. L. Levenson and J. M. Levenson, the amount due me today is $12,750, of which $5,000 is a moral obligation of Joseph M. Levenson." This entry bears the same date as that of the interview of which the deceased wrote in Exhibit 1. Construing the two entries together, the judge could find that the first assertion in the entry from the diary was a statement of fact. The statement that part of the sum mentioned was "a moral obligation" of only

one of the defendants was not harmful to the defendants.

Another entry in the diary of the plaintiff's intestate, dated October 3, 1931, referred to a promise to pay by J. M. Levenson and a promise to give the deceased a letter "guaranteeing my account, viz: $12,750." Various other entries by the plaintiff's intestate in his diary, some entries on "a paper" and on two yellow slips, and an entry by him in a "day book" were admitted. These bear dates from June 13, 1929, to November 1, 1930. They are in an abbreviated and fragmentary form. Much of the matter contained in them is colorless and harmless. Parts of them have some tendency to show that during the period covered there were business and financial transactions of some kind involving charges and credits between or among the plaintiff's intestate, the Levensons, Thomson, and Thomson & Kelley Company. The exceptions are directed to each entry in the diary and to each "yellow slip" as a whole, no separate objection, so far as appears, having been made to any particular parts. See *O'Driscoll* v. *Lynn & Boston Railroad*, 180 Mass. 187, 189. The judge instructed the jury in substance that this evidence was competent "purely as a background" and as bearing upon whether there was "reason for an accounting" between the parties but "not as to the truth of any figure there." In view of this instruction, and having reference to the evidence as a whole, we think that there was no reversible error in the admission of these entries.

One Isaacs, called by the plaintiff, testified that on two occasions in June or July, 1931, and once again several months later, at the office of the Levensons (the defendant Thomson not being present), he heard the plaintiff's intestate demand money of the two Levensons and threaten suit, and heard "Joe" Levenson, and on one of the occasions both of the Levensons, say that they would pay the plaintiff's intestate, that they would "guarantee" to pay him. It does not appear that any objection was made to this evidence until after the conclusion of the direct examination of the witness, when the defendants "moved to strike

out the witness's testimony" as immaterial. We need not discuss the admissibility of this evidence, since in any event the objection was not seasonably made. *Commonwealth* v. *Valentino*, 257 Mass. 419, 420. *Crowley* v. *Swanson*, 283 Mass. 82, 85.

One Coleman testified without objection that he was in the office of the plaintiff's intestate in the early summer of 1931, when the intestate came in with Isaacs and said that he had got the Levensons to agree to pay him after threatening to sue them; that he had "made a settlement"; that "the settlement was $12,750"; and that the Levensons had agreed to pay him that sum within four or five months.

The plaintiff himself testified that after the death of his intestate he had shown Exhibit 1 to the defendant Thomson, and that Thomson said "the settlement of $12,750 was correct" and would have been paid long before if it had not been that some money coming to the Levensons had been deposited by them in a bank and the bank had applied it to notes the Levensons owed "personally"; that he (Thomson) and the Levensons "would pay it"; and that Thomson and the Levensons "did considerable business in buying merchandise from the government." For reasons previously stated there was no reversible error in admitting this testimony.

There was no error in denying the defendants' motion for a directed verdict. The evidence, the substance of which has already been stated, was unsatisfactory and vague, and neither of the surviving defendants took the stand to clarify it. But in spite of this the evidence had some tendency to show that there had been transactions between the plaintiff's intestate on the one hand and the Levensons and Thomson on the other hand as the result of which monetary charges and credits had arisen between the parties and a balance was due; that the plaintiff's intestate and the Levensons had agreed, after discussion, that the amount of that balance was $12,750; and that Thomson, even if not present at each interview, had also accepted the accounting, agreed to the balance due and

paid $100 on account of it. The essential elements of an account stated between the plaintiff's intestate and the three original defendants could be found to have been established. *Bass* v. *Bass*, 8 Pick. 187, 193. *Rand* v. *Wright*, 129 Mass. 50, 51. *Chase* v. *Chase*, 191 Mass. 556, 562. *McMahon* v. *Brown*, 219 Mass. 23, 27. *Davis* v. *Arnold*, 267 Mass. 103, 110, 111. *Rizkalla* v. *Abusamra*, 284 Mass. 303, 306, 307. This is true even though the judge instructed the jury, as we construe his charge, that mere admissions of Thomson, as distinguished from declarations under the statute, would not be competent against the Levensons.

It is not necessary to an account stated that there be items of charge on each side which can be set off against each other. The charges may all be by one party against the other. In *Buxton* v. *Edwards*, 134 Mass. 567, at page 578, it was said that an agreement between the payee and the maker of a promissory note upon which several payments have been made as to the balance remaining due may be an account stated. To similar effect are *Weigel* v. *Hartman Steel Co.* 22 Vroom, 446, *Schutz* v. *Morette*, 146 N. Y. 137, 141, and Williston on Contracts (Rev. ed.) § 1863, at page 5235. An account stated must not be confused with the "mutual and open account current" to which reference is made in G. L. (Ter. Ed.) c. 260, § 6.

This action is not barred by the statute of limitations. The writ is dated May 24, 1937, within six years after the date when the evidence tended to show the account was stated. But an account stated is "a new or continuing contract" which by G. L. (Ter. Ed.) c. 260, § 13, requires a writing signed by the party chargeable in order to take the original liability that forms the basis of the account out of the operation of the statute. *Chace* v. *Trafford*, 116 Mass. 529. *King* v. *Davis*, 168 Mass. 133. It is provided, however, by c. 260, § 14, that § 13 "shall not alter or impair the effect of a payment of principal or interest made by any person," and there was evidence from which it could have been found that within six years of the date of the writ payments on account had been made to the plaintiff's

intestate by which the defendants had revived the entire liability that had entered into the account stated. *Day* v. *Mayo,* 154 Mass. 472, 474. *Gillingham* v. *Brown,* 178 Mass. 417, 422. *Nutter* v. *Mroczka,* 303 Mass. 343, 347. *Credit Service Corp.* v. *Barker,* 308 Mass. 476, 478. *Morganti* v. *Casey, ante,* 46, 49. It seems plain from the wording of §§ 13 and 14 that § 14 was intended to dominate § 13. If, therefore, payments have been made that in themselves have taken the underlying indebtedness out of the statute, that indebtedness is not barred, and § 13 does not apply to an action upon an account stating it. Section 13 applies only to actions upon debts that, except for the "new or continuing contract," would be barred.

The defendants contend that there was a variance between the bill of particulars and the proof in that the proof failed to show that the charges entering into the account stated "arose out of negotiations with the United States government, securing the purchase of war materials" as specified in the bill of particulars. Without pausing to discuss the office of a bill of particulars in an action on an account stated, we think it sufficient to call attention to the long established rule that a party who desires to rely upon a variance or similar defect must call the attention of the trial judge clearly and plainly to the defect relied upon, so that amendments can be made, or further proof supplied, or proper rulings made at the trial. *Edwards* v. *Carr,* 13 Gray, 234, 238. *Jones* v. *Wolcott,* 15 Gray, 541, 543. *Oulighan* v. *Butler,* 189 Mass. 287, 289. *Ridenour* v. *H. C. Dexter Chair Co.* 209 Mass. 70, 78. *Noyes* v. *Caldwell,* 216 Mass. 525, 527. *Goldsmith* v. *Traveler Shoe Co.* 236 Mass. 111, 114. *Braun* v. *Bell,* 247 Mass. 437, 441. *Earle C. Dodds Inc.* v. *Boston Casualty Co.* 308 Mass. 124, 127. Even if we assume that the reference to the pleadings in the defendants' motion for a directed verdict would suffice to call attention to an alleged variance between the declaration and the evidence, we are of opinion that it was not enough to show plainly to the trial judge that the defendants intended to rely upon a variance between the specified particulars and the evidence in a case like this where the

specifications were in a document separate from the declaration and filed at a different time, and where the declaration itself was in a standard form clearly adequate to cover the evidence. So far as appears the defendants did not in any other way call the attention of the judge to their claim of variance either in connection with the admission of evidence or the direction of a verdict.

There was no error in failing to give in terms the defendants' requested ruling numbered 1 that "there can be no basis for an action at law upon an account stated unless the plaintiff proves a preëxisting condition of debtor and creditor between the plaintiff and the defendants." It has been held that an account stated "cannot be made the instrument to create a liability where none before existed." *Chase* v. *Chase*, 191 Mass. 556, 562. In strict theory an account stated is supposed to be a mere computation of and agreement upon a balance of debt due and not an accord of unliquidated claims. This distinction is more of words than of substance. See Williston on Contracts (Rev. ed.) § 1862. In *Rizkalla* v. *Abusamra*, 284 Mass. 303, 306, it was held that the necessary relation of debtor and creditor could be found where the account stated involved the settlement of a disputed claim. At any rate, the judge was bound to avoid giving the jury the impression that the plaintiff had to prove any items of the original indebtedness. *Chace* v. *Trafford*, 116 Mass. 529, 532. *Rand* v. *Wright*, 129 Mass. 50, 51. *Millen* v. *Williams*, 210 Mass. 516, 519, 520. *Rizkalla* v. *Abusamra*, 284 Mass. 303, 307. He instructed them that the plaintiff predicated his right to recover upon the settlement "of this outstanding account between them," and that it was for the jury to say "whether there was an accounting and whether there was, prior to the accounting, such relationship, such business relations, which called or which you say reasonably called for an accounting, and an accounting was had." He also referred to parts of the evidence as bearing upon whether there was "an accounting between the parties" and on "whether you are to believe or disbelieve the plaintiff's claim that there was reason for an accounting." These and other references to an "account"

must have been understood as referring to preëxisting indebtedness between the parties to the account stated. As applied to the evidence in this case we think that these instructions were sufficient upon the necessity of a preëxisting debt.

The defendants' requested instruction numbered 3 that the action cannot be based upon a preëxisting relation of debtor and creditor which involves only one item was rightly refused. An account stated may be based upon a single item of actual indebtedness. *Gardner* v. *Watson*, 170 Cal. 570, 574. *Weigel* v. *Hartman Steel Co.* 22 Vroom, 446, 451. *Griffith* v. *Rosenberg*, 166 Wash. 677, 681, 682. Williston on Contracts (Rev. ed.) § 1863, at page 5235. See *Buxton* v. *Edwards*, 134 Mass. 567, 578.

There was no error in refusing to give the defendants' requested instruction numbered 4 that "An agreement . . . to pay the obligation of a third party cannot be the subject matter of an account stated." It is true that the preëxisting indebtedness must be between the parties to the accounting and that a mere promise to pay the debt of another which the promisor did not previously owe is not in itself an account stated. *Cavanaugh Bros. Horse Co.* v. *Gaston*, 255 Mass. 587. The charge of the judge was consistent with this. But we see no reason why one or more items entering into an account stated may not consist of indebtedness originally of another but which the accounting party has legally assumed before the account is stated. See *Buck* v. *Hurst*, L. R. 1 C. P. 297. Such items would constitute preëxisting indebtedness of the accounting party. There was evidence in Exhibit 1 that the Levensons and Thomson had already, before the account was stated, assumed and become personally obligated for indebtedness of the corporations.

Other requests by the defendants for rulings are sufficiently covered by what has previously been said. Exceptions to the charge require no further discussion.

*Exceptions overruled.*