OLD COLONY TRUST COMPANY & another, trustees, *vs.*
MANOEL ANTONIO SHAW & others.

Suffolk.    October 6, 1964. — December 8, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Evidence,* Declaration of deceased person, Preliminary question, Opinion,
Best and secondary, Memorandum.

A memorandum of relevant facts written by one, subsequently deceased,
on an executors' inventory filed in a Probate Court was admissible in a
proceeding as a declaration of a deceased person under G. L. c. 233,
§ 65, upon warranted preliminary findings by the trial judge of the
facts set forth in the statute.    [216]

Whether the preliminary findings made by a judge in admitting a declara-
tion of a deceased person in evidence under G. L. c. 233, § 65, were
warranted is a question open to decision by this court where everything
on which the judge made his findings is contained in the record.
[216]

The preliminary findings required for admitting a declaration of a de-
ceased person in evidence under G. L. c. 233, § 65, may be made on the
basis of matter contained in such declaration as well as evidence ex-
trinsic thereto.    [216–217]

On the record, a finding was warranted that a memorandum written by
one who had been a testator's "man of business" and was designated
in the testator's will to keep the accounts of the estate was, within G. L.
c. 233, § 65, written in good faith and on the writer's personal knowl-
edge that the testator had charged advances made by him to his children
against them in his books of account.    [217]

A memorandum offered in evidence as a declaration of a deceased person
under G. L. c. 233, § 65, written by one, later deceased, who had been
a testator's "man of business" and under the testator's will was to keep
the books of the estate, and reciting that designated sums noted against
the names of some of the testator's children were "to be deducted" re-
spectively from certain distributable shares in a testamentary trust
fund "in accordance with the terms of . . . [a specified] article of the
will," which provided for such deductions of the respective amounts of
advances made by the testator to children and "charged against them
[by him] upon . . . [his] books of account," was held to state a gen-
eral conclusion of fact that the designated sums were charged as ad-
vances against the named children on the testator's books, and not to be
inadmissible on that issue as a mere opinion.    [217–219]

Old Colony Trust Co. *v.* Shaw.

Where a trial judge, a great many years after a testator's death, might properly find that books of account of the testator, once existent, were unavailable through no fault of parties seeking to prove the existence and nature of entries therein and that due search had been made for the books, it was proper to admit as secondary evidence a memorandum, qualifying as a declaration of a deceased person under G. L. c. 233, § 65, which had been made by one, since deceased, who had been the testator's "man of business" and was designated in his will to keep the accounts of the estate, and which contained recitals tending to show that the entries had been made in the books and the terms of the entries. [219]

Where, in a proceeding for instructions by trustees under a will involving the issue whether advances had been made by the testator to his children "charged against them upon . . . [his] books of account," which were no longer available, a memorandum containing recitals tending to show the existence and amounts of advances so charged on the books, made by one, since deceased, who had been the testator's "man of business" and was designated in his will to keep the accounts of the estate, was properly admitted as secondary evidence and as a declaration of a deceased person, and there was no evidence contrary to the memorandum, a decree appropriate on the basis of the charged advances shown by the memorandum was affirmed. [219–220]

PETITION for instructions filed in the Probate Court for the county of Suffolk on September 27, 1962, by the trustees under the will of Quincy A. Shaw.

The case was heard by *Keville,* J.

*John M. Woolsey, Jr.,* stated the case.

*Warren F. Farr (W. Lincoln Boyden, III,* with him) for Louis A. Shaw, 2d, & another; *Arnold W. Hunnewell, Jr.,* for Quincy A. Shaw, Jr., *Abraham Margolis* for Alexander A. Shaw, *& Donald O. Smith* for Manoel A. Shaw & another, also with him.

*Brooks Potter (James C. Heigham* with him) for Pauline S. C. Greene; *John H. Linsley* for Nancy S. Cutler & another, *& Ira S. Siegler,* of the District of Columbia, for Joanne S. Freedman, also with him.

SPALDING, J.   Quincy A. Shaw (the testator) died on June 12, 1908, and his will was admitted to probate on July 2, 1908.   By the third article of his will he gave the residue of his estate to his trustees in trust "To hold the same during the lives of my said wife and of my children and of the survivor or longest liver of them, and upon the death of the

survivor or longest liver of them, I give, . . . the said Trust Property as it shall then exist to my lawful issue then living, they taking by representation according to the stocks.''

Article Fourth reads: ''Whereas at the time of my decease I may have advanced to my children certain sums of money or securities, which I shall have charged against them upon my books of account, I authorize and direct my said Trustees at the time of the final distribution of the estate, to deduct from the share of each child and his issue such amounts as may be respectively charged against them, but without interest; and any such charge shall not be enforced as a debt in any manner except as herein directed.''

The testator was survived by his widow, Pauline, who died on February 10, 1917, and by four children, Pauline Shaw Fenno, who died on August 6, 1952, Marion Shaw Haughton, who died on April 19, 1958, Robert Gould Shaw, Second, who died on March 29, 1930, and Quincy A. Shaw, Jr., who died on May 8, 1960. The testator also had a son, Louis A. Shaw, who died on July 2, 1891, thus predeceasing his father. When the trust terminated on May 8, 1960, there were living issue of each of the testator's children.

During 1960 and 1961, the testator's trustees distributed the major portion of the trust property. Subsequent to these distributions, an employee of the Massachusetts Inheritance Tax Division in connection with the determination of the inheritance taxes payable with respect to the final distribution of the trust contended that advances under the fourth article had in fact been made by the testator and that these were to be included in the amounts subject to inheritance tax. In support of this contention she produced a paper which appeared to be a copy of a memorandum appended to the inventory filed by the executors of the testator. Upon learning of this, the trustees examined the inventory (filed in the Registry of Probate on October 1, 1908) [1] and discovered on one of its pages under the caption

---

[1] The will was executed on October 8, 1907, approximately a year before the filing of the inventory.

"Memorandum" a notation which reads: "The following amounts are in accordance with the terms of the fourth article of the will of the testator to be deducted from the share of each child and his issue at the time of the final distribution of the trust estate: Mrs. Marion S. McKean $184,855.74; Quincy A. Shaw 347,120.00; Mrs. Pauline S. Fenno 226,153.72; Robert G. Shaw 2nd 387,808.97."

The memorandum, as well as the inventory, was in the handwriting of Albert M. Lyon who was authorized under the tenth article to keep the accounts of the estate;[1] it was written on an otherwise blank sheet of inventory schedule paper. The page containing the memorandum directly follows the schedule of personal property and directly precedes the schedule of real estate.

The three appraisers of the estate, one of whom was Lyon, signed the following statement which appeared on the first page of the inventory: "Pursuant to the foregoing order to us directed, we have appraised said estate as follows, to wit: Amount of Personal Estate, as per schedule exhibited, $7,150,483.88. Amount of Real Estate, as per schedule exhibited, $390,650.00." Directly below this was a jurat of the executors that "the foregoing is a true and perfect inventory of all the estate of said deceased, that has come to their possession or knowledge *as herein explained*"[2] (emphasis supplied).

The trustees brought this petition in the Probate Court seeking instructions as to whether the memorandum was evidence of such advances sufficient to require them to deduct the amounts therein set forth from the shares to be distributed on termination of the trust in accordance with the fourth article of the will. Additional instructions relating to questions of adjustments and interest were asked, in case of an affirmative answer to the principal question.

---

[1] The pertinent provisions of this article read: "I direct my Trustees to retain the present location of the business office of the estate at 12 Ashburton Place, Boston, and that the accounts thereof shall be kept by Albert M. Lyon . . . as they now are until circumstances shall make a change imperative."

[2] The italicized words were added in handwriting to the printed wording of the jurat.

At the hearing on the petition there was virtually no dispute as to the facts. The question for decision arises from the admission in evidence, subject to exception, of the memorandum of advances and the effect which was given to it in the final decree. The judge ruled that the memorandum was admissible and was "sufficient to charge these advances." A decree was entered instructing the trustees that the "entry in the inventory . . . is, considered with other evidence . . ., sufficient to require the . . . [trustees] to deduct the amounts of advances as set forth in said entry from the shares to be distributed on termination of the trust in accordance with . . . Article Fourth."[1] Certain of the respondents who would be adversely affected by the decree appealed.

We are of the opinion that the memorandum was admissible as a declaration of a deceased person under G. L. c. 233, § 65, which provides in pertinent part, "In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant."

It is a condition precedent to the admissibility of a declaration under § 65 that the presiding judge shall make a preliminary finding of the facts essential to admission. *Carroll* v. *Boston Elev. Ry.* 210 Mass. 500. *Slotofski* v. *Boston Elev. Ry.* 215 Mass. 318. The admission of the declaration imports such a preliminary inquiry and finding if nothing to the contrary appears. *Rothwell* v. *First Natl. Bank,* 286 Mass. 417. But the decision of the judge admitting the declaration is not conclusive where all the evidence material to the issue is contained, as here, in the record. In such a case, the action of the judge may be reviewed by this court. *Ames* v. *New York, N. H. & H. R.R.* 221 Mass. 304. *Hasey* v. *Boston,* 228 Mass. 516.

Not only can the court consider evidence which is extrinsic to the declaration, but it can also look to the statements,

---

[1] The decree also instructed the trustees with respect to other matters but these need not concern us, for the parties are in agreement as to them, and they have not been argued.

whose admissibility is being determined, as the basis for making preliminary findings. In *New York Cent. R.R.* v. *Central Vt. Ry.* 243 Mass. 56, reports, which were signed by the deceased president of a corporation, were introduced as secondary evidence of a contract, the contents of which had been lost or destroyed. The court made use of the reports in determining whether they were made on the personal knowledge of the president. "An examination of the reports . . . shows that the president was reciting facts and making recommendations about matters which apparently he was personally negotiating." *New York Cent. R.R.* v. *Central Vt. Ry., supra,* at 68. See *Tenney* v. *Foss,* 268 Mass. 69. Compare *Hasey* v. *Boston,* 228 Mass. 516, where the declaration itself established that it was not made upon the personal knowledge of the deceased declarant.

The following facts and inferences could be found and drawn from the record, including the probate inventory and memorandum. Lyon, who died in 1953, was the writer of the memorandum. He was the bookkeeper charged under article tenth of the will with keeping the books of account. After the testator's death, Lyon was in charge of keeping the books of the estate. He also made up the annual accounts of the trustees to be filed in the Probate Court and carried out their directions with respect to the purchase and sale of securities. He was the testator's "man of business" who had looked after his interests prior to the testator's death in 1908. It could be reasonably inferred that Lyon, in appraising the estate, examined the books. And an inference was likewise permissible that in stating the total advancements to each child, he complied with article fourth, of which he was aware. From these facts and inferences, the judge could have found that Lyon's memorandum was written by him in good faith and upon his personal knowledge that charges were made in the books of account.

The appellants argue that the memorandum is inadmissible because it is an opinion rather than a statement of fact. Section 65 does not remove any ground of objection except the rule against hearsay. If on any other ground

the evidence offered is objectionable, the statute does not render it admissible. *Pappathanos* v. *Coakley,* 263 Mass. 401, 407. Thus, "[m]ere opinion based upon facts not known to the declarant through his own senses is inadmissible." *Kulchinsky* v. *Segal,* 307 Mass. 571, 572. *Tafralian* v. *Metropolitan Life Ins. Co.* 316 Mass. 429. But the statute is remedial and is to be construed liberally. Statements of fact are not rendered inadmissible merely because they are summed up in a general expression or conclusion. *Tafralian* v. *Metropolitan Life Ins. Co., supra,* at page 431. "While declarations, in order to be admitted under . . . [§ 65], must be statements of fact and not of opinion, yet it is obvious that declarations of a deceased person are scarcely likely to have been made in the form that would be required of a living witness on the stand. In order that the statute may serve its purpose, it is held that general conclusions of fact by the declarant are competent." *Samuel Cohen Shoe Co.* v. *Cohen,* 329 Mass. 281, 284. Where, as here, the declarant is dead, "the evidence should not be lost merely because he stated the conclusion rather than the details that might be required of a witness." *Kulchinsky* v. *Segal,* 307 Mass. 571, 573. See *Eldridge* v. *Barton,* 232 Mass. 183; *Shamgochian* v. *Drigotas,* 343 Mass. 139.

A case bearing considerable resemblance to the case at bar is *Berwin* v. *Levenson,* 311 Mass. 239. There the plaintiff's declaration, as amplified by a bill of particulars, alleged that an account arose out of the purchase of surplus war materials during the years 1926 through 1929. Under § 65, a writing of the plaintiff's intestate was admitted which read in part, "the purpose of my talk . . . was to ascertain the amount due me on that date, as payments had been made to me previously on account of the original settlement. It was mutually understood and agreed that $12,750 was the amount due me." The $12,750 figure was the balance of an account after a number of transactions had occurred and payments had been made. The court said, "There was no error in admitting this exhibit under the statute. The objection urged to its admissibility as dis-

tinguished from its bearing and effect is that it contains conclusions and is not limited to statements of fact. But essentially the statements could be found to be statements of fact." Page 242. As in the *Berwin* case, the memorandum here states general conclusions of fact which summarize the charges made in the books of account.

It is also contended that the Lyon memorandum does not satisfy the requirements of the best evidence rule. Under this rule, in order to permit proof by secondary evidence of the contents of the allegedly lost document, the trial judge must make preliminary findings that the original had become unavailable, otherwise than through the serious fault of the proponent of the testimony, and that reasonable search had been made for it. *Fauci* v. *Mulready*, 337 Mass. 532, 540, and cases cited. The judge could have inferred that the books of account had existed; that the books were unavailable through no fault of those respondents who would benefit if advancements were made; and that proper search had been made for them. The requirements of the best evidence rule having been met, the Lyon memorandum was properly admitted as secondary evidence that charges were made upon the books of account.

The appellants argue that the admission of the memorandum would permit advancements to be established in a manner other than that provided by the testator. In support of this contention they cite *Loring* v. *Blake,* 106 Mass. 592. There a testatrix gave property to her children in equal shares. She directed that no child should be charged with any money advanced on his or her account unless the same be charged in a memorandum filed with her will. The testatrix gave a sum to one of her daughters who signed a receipt stating that the sum was to be deducted from the amount she would receive from the estate. The court held that the receipt was not such a memorandum as was contemplated by the will and that the sum was not to be deducted from the daughter's share. That case is one in which the terms of the will were being construed. The issue presented was whether a receipt was a memorandum as

contemplated by the will. Here, the issue is not whether the Lyon memorandum can be considered entries in a book of account, but rather, since the books of account were lost, whether the memorandum can serve as evidence of what those entries were.

For the reasons stated above we hold that the Lyon memorandum was admissible, and there being no evidence which tended to establish that charges for advancements were not made, the decree below must be affirmed. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*