MARLENE MITCHELL vs. HASTINGS & KOCH ENTERPRISES, INC., & others.[1]

No. 92-P-1217.

Hampden. October 5, 1993. - March 22, 1995.

Present: ARMSTRONG, GILLERMAN, & PORADA, JJ.

*Evidence*, Hearsay, Declaration of deceased person, Of agency. *Agency*, What constitutes, Scope of authority or employment. *Motor Vehicle*, Agency, Entrustment. *Negligence*, Motor vehicle, Joint tortfeasor. *Practice, Civil*, Special verdict.

At the trial of a civil action the judge properly admitted in evidence the declaration of a deceased person under the hearsay exception created by G. L. c. 233, § 65. [274-275]

At the trial of a negligence action arising from an accident involving an automobile and a motorcycle, sufficient evidence was produced for the jury to conclude that the driver of the car, which bore a dealer plate, used the car and plate with the dealer's permission, thus establishing the dealer's liability pursuant to G. L. c. 231, § 85A. [275-276]

Evidence at the trial of a tort action was sufficient to establish the liability of the owner of an automobile on a theory of negligent entrustment of the vehicle to the driver whose negligent operation caused the accident in which the plaintiff was injured. [276-278]

In a civil action, the agency principles expressed in G. L. c. 231, § 85A, provided no basis for establishing liability of an automobile dealer whose dealer registration plate was affixed to a motorcycle involved in an accident that injured the plaintiff, where there was no evidence that the dealer was the owner of the motorcycle. [278-279]

The court declined to consider an argument raised for the first time on appeal with respect to alleged inconsistent answers to special verdict questions returned by a jury in a civil action. [279]

At a civil trial, error in the judge's apportioning the judgments against various defendants in amounts proportionate to the percentages of fault assigned by the jury did not require a new trial, where the defendants were, as matter of law, jointly and severally liable to the plaintiff and where the plaintiff's own fault was not causally related to her injuries. [280-281]

---

[1]Frank Nowak and Ray Stone Pontiac.

CIVIL ACTION commenced in the Superior Court Department on June 30, 1989.

The case was tried before *Raymond R. Cross*, J.

*William P. O'Neill* for Hastings & Koch Enterprises, Inc.

*Michael K. Callan* for Ray Stone Pontiac.

*John F. Dalsey* for the plaintiff.

ARMSTRONG, J. Marlene Mitchell was injured when the motorcycle on which she rode as a passenger was in an accident with an automobile driven by Frank Nowak. To recover for those injuries, she brought this action against Nowak and the automobile's owner, Hastings & Koch Enterprises, Inc. (Hastings & Koch). Hastings & Koch cross-claimed against Nowak and filed a third-party complaint against Steven Hunter and Ray Stone Pontiac, thought to be the operator and owner, respectively, of the motorcycle. Mitchell amended her complaint to state claims against the same two defendants. A jury, on special questions, returned verdicts against all the defendants except Steven Hunter, assigning (under the comparative negligence law, G. L. c. 231, § 85) percentages of fault. The trial judge then ordered entry of a judgment, apportioning Mitchell's total damages, found by the jury to be $150,000, against the defendants[2] in proportion to their respective percentages of fault, and he denied a motion by Mitchell to amend the form of the judgment to reflect joint and several liability. The case is before us on appeals by Mitchell, Hastings & Koch, and Ray Stone Pontiac.

The circumstances of the accident were only dimly illuminated by the evidence at trial. The Nowak car, it was clear from the physical evidence, had been traveling northbound and then crossed the southbound lane and crashed into a concrete wall on the west side of the road. The motorcycle lay in the road, apparently on the southbound side,[3] with the

---

[2]The jury found that Hunter was not the operator of the motorcycle, to whom they assigned ten percent of the fault. Hunter, like Nowak, had defaulted. Judgment was entered against "Steven Hunter (or the operator of the motorcycle)." Hunter has not claimed an appeal.

[3]The jury heard evidence as to the location of the motorcycle after the accident, but only by way of references to a blackboard chalk that is not

plaintiff lying on the pavement nearby. The damage to the motorcycle was interpreted by one witness to show a front end collision and by another to show merely abrasion marks from scraping on its side against the pavement. At the scene, the motorcycle operator identified himself to a police officer as Steven Hunter, but no statement was taken from him. He rode in the ambulance with Mitchell to the hospital but then disappeared. Mitchell was unconscious at the scene, with a dangerously elevated blood alcohol reading of .312. When she awoke, she had no recollection whatever, either of the accident or of the identity of the motorcyclist who had given her the ride. Frank Nowak, the driver of the car, fled from the accident scene on foot, leaving the keys in the ignition. Three days later, he appeared at the police station, brought in by Jon Hastings of Hastings & Koch, the owner of the car, and gave a statement to the police that the motorcycle had driven into his lane and he had swerved left, into the oncoming lane and the wall, to avoid a collision. But by the time of his deposition, and later at trial, Nowak professed to have no recollection beyond the fact of being in an accident. "[I]t was just one of those things that happened so quick," he testified; "[i]t just happened." He had, at trial, no recollection of what vehicle he had been driving, where he had come from, where the accident occurred, or whether he had been drinking.

Another version of the accident came in over objection. One Lavonda Bobb testified that she had been at a bar the night of the accident drinking with her "very good friend" Mark Daigle, and that Mitchell, also drinking at the bar, and an acquaintance of both, had come over and pestered Daigle incessantly to give her a ride on his "bike." Lavonda Bobb had eventually departed, leaving Daigle and Mitchell together. Later that night, about 4:00 A.M., two hours after

---

before us on appeal. The sense of the closing argument of Mitchell's counsel to the jury, however, seems to be, that if Nowak's story was correct (i.e., if the motorcycle crossed into the northbound lane and Nowak swerved left into the southbound lane to avoid it), how did the motorcycle end up on the southbound side of the road?

the accident, Bobb got a call from Daigle saying that he had been in an accident, that a car had changed lanes and collided with his motorcycle, and that Mitchell was in the hospital. Later, Daigle had come to Bobb's apartment, where she cleaned his injuries — only abrasions, apparently — and he reiterated his story that the accident was caused by the car's going out of control. Daigle himself was unavailable to testify, having died of a drug overdose before trial, but his statements to Bobb came in as declarations of a deceased person, G. L. c. 233, § 65.[4]

Other facts will be mentioned in connection with the arguments to which they pertain.

1. *Declaration of a deceased person.* Hastings & Koch objected to Lavonda Bobb's recitation of Mark Daigle's version of the accident, casting the blame on Nowak. General Laws c. 233, § 65, creates an exception to the hearsay rule for the declaration of a deceased person, provided the court makes a preliminary finding that the declaration was "made in good faith and upon the personal knowledge of the declarant." See *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 216 (1964). We do not understand Hastings & Koch to argue that, on the evidence before him, the judge could not properly find Daigle's alleged statement to Lavonda Bobb to have been made in good faith.[5] Rather, it argues that the judge failed to make the necessary preliminary findings of good faith and personal knowledge and instead abdicated his role to the jury. Its argument is predicated on the facts that the judge did not articulate the requisite findings and, when he denied Hastings & Koch's motion in limine to exclude the Daigle

---

[4]Steven Hunter testified at the trial that he had been a friend of Mark Daigle; that Daigle's license to operate motor vehicles had been suspended; and that Hunter had given Daigle permission to use Hunter's name and social security number in the event of an encounter with the police. Hunter denied having been himself the driver of the motorcycle.

[5]Its brief does cite *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 620 (1989), for the proposition that, where time for reflecting and a motive to lie exist, it is proper to exclude such a statement; but that decision only affirmed a preliminary finding by the judge that a decedent's statement had not been made in good faith. It did not suggest that the opposite finding would have been error.

declaration, made the statement, "I'll let the jury decide whether the statements were made in good faith."

There is little to the argument. It is not contended that a judge, having properly admitted statements of a deceased person in evidence, may not instruct the jury to scrutinize them and to consider the declarant's motive in making them. As to the judge's failure to articulate the preliminary findings, that would have been the better practice; but the decisions are legion to the effect that admission of the deceased person's alleged statements imports findings by the judge of that person's personal knowledge and good faith. See, e.g., *Stanton's Case*, 331 Mass. 378, 379-380 (1954); *Ricciutti* v. *Sylvania Elec. Prods., Inc.*, 343 Mass. 347, 351 (1961); *Reni* v. *Courtney*, 4 Mass. App. Ct. 235, 237 (1976). The trial judge's remark does not indicate to us that he misunderstood the prerequisites for admission of a deceased person's statements. It would take a clearer showing to make us conclude that such was the case.

2. *Hastings & Koch's responsibility for Nowak's conduct.* With Mark Daigle's statement received in evidence through Lavonda Bobb's testimony, the jury had ample basis for concluding that the accident occurred primarily as a result of Nowak's losing control of his car.[6] Hastings & Koch argues, however, that it cannot be found responsible for Nowak's negligence, that he was not an employee of Hastings & Koch, and that Nowak had used the car without authority.

Though ardently pressed, the argument is without legal merit. Under G. L. c. 231, § 85A, if a car owned by a dealer, bearing its dealer plates, is involved in an accident, the dealer is prima facie responsible for the driver's conduct.

---

[6]The jury were in a position to determine Nowak's fault even without the Bobb testimony based on the physical evidence, coupled with Nowak's fleeing from the accident scene. Most of the physical evidence (apart from the evidence of Nowak's car having crossed from the northbound to the southbound lane and crashed into a wall on the west side of the road) is obscured from the appellate record, having been received through blind references to a diagram of the accident scene that was drawn on a blackboard (and not photographed or otherwise preserved for purposes of appeal). They were nevertheless evidence from which the jury could draw conclusions.

*Legarry* v. *Finn Motor Sales, Inc.*, 304 Mass. 446, 448-449 (1939). Hastings & Koch does not contest that it owned the car Nowak was driving or that it bore a Hastings & Koch dealer plate. Hastings & Koch thus had the burden of proving that Nowak was not its servant or agent in driving the car. *Cheek* v. *Econo-Car Rental Sys. of Boston, Inc.*, 393 Mass. 660, 662 (1985). "Under this statute the mere fact of registration in the name of the defendant as owner commonly carries the case to the jury so far as the agency of the driver in behalf of the defendant is concerned. The jury may disbelieve the testimony of witnesses tending to the contrary." *Legarry* v. *Finn Motor Sales, Inc.*, *supra*, at 447 (citations omitted). See also *Nugent* v. *Classic Car Corp.*, 379 Mass. 913 (1979). In rejecting Hastings & Koch's contention that Nowak stole the car, the jury might well have taken into account the evidence that the alleged theft of the car was not reported to the police until three days after the accident; that Frank Nowak, in testifying, denied stealing the car; that a theft by Nowak of the car, plates, and keys would have been difficult, the Hastings & Koch lot being enclosed by fencing topped with barbed wire and patrolled by a guard dog; that Nowak had an acknowledged, if informal, relationship with Hastings & Koch, having driven vehicles in the past to or from auto auctions for Hastings & Koch and having brought friends at times to the Hastings & Koch lot; that Nowak had been a friend of Jon Hastings for ten years; that Jon Hastings brought Nowak in to the police station originally and continued to drive him to and from his pretrial appearances; that the complaint for car theft was dismissed for want of prosecution; and that Nowak could not account for how he came into possession of the car. In the circumstances, the jury could properly conclude that Nowak and Jon Hastings were being less than forthcoming about the extent of their relationship and that, in all likelihood, Nowak was using Hastings & Koch's car and dealer plate with its permission.

3. *Negligent entrustment.* Hasting & Koch was found liable also on a count alleging that it had negligently entrusted the car to Nowak. Liability on this theory is predicated on

the owner's having entrusted a vehicle to a person who was incompetent or unfit to use it properly, whose incompetence or unfitness was the cause of the injury to the plaintiff. The general rule in Massachusetts is that the entrustor, to be liable, must have had actual knowledge of the unfitness of the entrustee (as contrasted with mere reason to know that the entrustee was unfit or incompetent). *Leone* v. *Doran*, 363 Mass. 1, 13 & n.3 (1973). *Kunkel* v. *Alger*, 10 Mass. App. Ct. 76, 82 n.6 (1980). Nowak's driving record showed many violations, including three convictions of driving under the influence of alcoholic beverages, and the jury could properly conclude from his record that he was an unfit driver. The same evidence recited above concerning the relationship between Nowak and Jon Hastings would probably warrant a further inference that Hastings was more likely than not aware of Nowak's spotty driving record and his propensity to drive under the influence. In the case of recalcitrant witnesses, it is often necessary to infer their state of mind from circumstantial evidence.

There was another basis, however, for the finding of negligent entrustment. There was evidence that Nowak's driving record had led to suspension of his operator's license for two years as an habitual traffic offender and that the accident had occurred during the period of suspension. Even if Hastings' actual knowledge of the suspension could not properly be inferred from his general closeness to Nowak, the decisions are clear that a car's owner has a duty to ascertain that another is properly licensed before permitting him to operate the car. See *Gordon* v. *Bedard*, 265 Mass. 408, 412-413 (1929); *Leone* v. *Doran*, 363 Mass. at 8-14; *Davis* v. *Walent*, 16 Mass. App. Ct. 83, 88-89 (1983). Thus, an owner who permits operation of his car by one whose license has been suspended or revoked, regardless whether he has actual knowledge of that fact, may himself be found responsible, on a negligent entrustment basis, for the negligent operation of the unlicensed driver. This exception to the usual requirement of actual knowledge is based on the affirmative duty imposed by G. L. c. 90, § 12, not to permit operation by

one not properly licensed. See *Gordon* v. *Bedard, supra* at 410; *Leone* v. *Doran, supra* at 8-9; *Davis* v. *Walent, supra* at 87.

4. *Ray Stone Pontiac and Mark Daigle.* The jury's finding that Ray Stone Pontiac was responsible for the negligence of the operator of the motorcycle (whether Hunter or Daigle) was based on the fact that, as could be found on somewhat contradictory evidence,[7] the motorcycle bore a dealer plate registered to Ray Stone Pontiac. The complaint alleged two theories of liability against Ray Stone Pontiac: the agency theory, predicated on G. L. c. 231, § 85A, discussed above; and a negligent entrustment theory, for entrusting either the motorcycle or the plate, or both, to the operator. As to the negligent entrustment theory, the trial judge directed a verdict for Ray Stone Pontiac. Mitchell does not argue that that ruling was error; indeed, she concedes the contrary. Ray Stone Pontiac moved for a directed verdict also on the agency theory. The judge denied that motion. This was error. There was no evidence from which it could be found that the motorcycle was owned by Ray Stone Pontiac.[8] A finding of agency under § 85A is predicated on the vehicle (here, the

---

[7]There was evidence that the plate on the motorcycle was a dealer plate with the numbers 959, but the evidence was confusing whether the plate read 959, 959J, DLR 959, or possibly 959B. The confusion was never resolved because, according to Robert Dress, the owner of the auto repair shop to which the motorcycle was taken after the accident, the license plate was located on the bike before Lavonda Bobb visited the shop and looked at the vehicle, but that after her departure the plate was found to have disappeared.

[8]Dealer and repair plates, intended for transfer among many vehicles, do not import ownership of the vehicle. The sole evidence on ownership from Lavonda Bobb, who said the motorcycle belonged to Daigle, was that she had often helped him clean it. Daigle himself was not shown to have had any connection with Ray Stone Pontiac. Daigle seems possibly to have obtained the plate indirectly through a Ray Stone Pontiac employee, Charles Ewig, who had the use of a dealer plate to drive cars to and from auto auctions. Ewig had an interest in another business, called The Bug House, which was located next to a motorcycle repair business called H & P Cycle. Ewig's partner in the Bug House was a partner with Steven Hunter in H & P Cycle. Daigle, a close friend of Hunter, "hung out" at H & P Cycle. Mitchell testified that Ewig permitted his Ray Stone Pontiac plates to be used by H & P Cycle. Mitchell's appeal, directed to another issue (see *infra*), raises no question whether the judge erred in foreclosing liability based on negligent entrustment by Ray Stone Pontiac of its dealer plate. Cf. *McDonald* v. *Dundon,* 242 Mass. 229, 232-233 (1922).

motorcycle) having been registered in the name of the principal "as owner." See *Nugent* v. *Classic Car Corp.*, 379 Mass. at 913 ("G. L. c. 231, § 85A, created a prima facie case of control by the corporation over the operation of the vehicle only if the corporation owned the vehicle"). *Legarry* v. *Finn Motor Sales, Inc.*, 304 Mass. at 447. *Bachand* v. *Vidal*, 328 Mass. 97, 101 (1951). Because the finding against Ray Stone Pontiac was based solely on the agency theory (i.e., the prima facie effect of § 85A), that finding must be reversed and judgment entered for Ray Stone Pontiac.

5. *Inconsistent answers to special verdict questions.* Hastings & Koch argues that the judge erred when he allowed the jury to find it liable under both an agency theory and a negligent entrustment theory and to find different percentages of fault for Nowak and Hastings & Koch. It cites no authority — nor did it seek to have the judge modify his instructions or revise the special verdict questionnaire before submission. These omissions provide a sufficient basis to deny review. *Cosentino* v. *Cosentino*, 10 Mass. App. Ct. 892 (1980). *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 83 (1992). It is true that, if Hastings & Koch's liability were based solely on the agency theory, its liability being derivative, would necessarily be identical with Nowak's. See *Gangl* v. *Ford Motor Credit Co.*, 37 Mass. App. Ct. 561, 562-563 (1994). Negligent entrustment is an independent (but not inconsistent) basis for liability, involving direct fault on the part of the entruster, which may be greater or less than that of the entrustee. Consider, e.g., an adult who entrusts a loaded firearm to a child: the fault of the child for any ensuing damage might be found negligible, or nearly so, and the fault of the adult the principal cause of the accident. How the distinct bases of liability should have been reflected in the special verdict questionnaire is a question not raised at trial and not presented in this appeal.[9]

---

[9]As the case against Ray Stone Pontiac was submitted to the jury solely on an agency theory, it was error to permit the jury to assign percentages of fault to both Ray Stone Pontiac and the motorcycle operator and to cumulate these percentages in arriving at one hundred percent.

6. *Mitchell's appeal.* The judge ordered judgments to be entered against the defendants in dollar amounts proportional to the percentages of fault assigned by the jury to each defendant. Thus, in effect, the judge ruled that the defendants did not bear joint and several liability for Mitchell's damages. This was error, and it left Mitchell potentially in the position of not being able to collect fully on her judgment. As matter of law, the negligence of the operators of the two vehicles and that of Hastings & Koch for negligent entrustment operated as concurrent causes of Mitchell's injuries, making them jointly and severally liable to Mitchell. See *O'Connor* v. *Raymark Indus., Inc.,* 401 Mass. 586, 591 (1988), and cases cited. Contrast *Glicklich* v. *Spievak,* 16 Mass. App. Ct. 488, 496-498 (1983).

The errors do not require a new trial. Because the jury found that Mitchell's own negligence was not causally related to her injuries, it is immaterial for purposes of judgment that the jury's assignment of percentages of fault was tainted by error. The only significance of assigning percentages of fault was to determine whether the plaintiff could recover at all from the defendants collectively, and, if so, what percentage of her damages she could collect. *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 170 (1978). The comparative negligence law, G. L. c. 231, § 85, is irrelevant to the apportionment of liability among joint tortfeasors. *Zeller* v. *Cantu,* 395 Mass. 76, 79-81 (1985). The reversal of the finding against Ray Stone Pontiac thus has no practical impact on the liabilities of the remaining defendants. The same is true of the possibility that a part of the fault attributed by the jury to Hastings & Koch was based on the agency theory. Contrast *Rolanti* v. *Boston Edison Corp.,* 33 Mass. App. Ct. 516, 530-531 (1992), where the plaintiff was found twenty-four percent negligent and the two defendants thirty-eight percent apiece, and reversal against one of the two defendants was held to necessitate retrial. In such a case, "[w]e do not know how the jury might have allocated negligence had they been instructed to allocate negligence only between the plaintiff and the [remaining] defendant," *Laveck* v. *Pas-*

coe Pizza, Inc., 29 Mass. App. Ct. 935, 936 (1990); no re-
trial is required, however, where the jury has found the
plaintiff's negligence to be causally unrelated to the accident
and her resulting injuries.

There is no merit to the appellants' other contentions.[10]

Those provisions of the judgment allocating the plaintiff's
recovery among the several defendants are reversed. The
judgment is to declare that Hastings & Koch, Frank Nowak,
and Steven Hunter (who defaulted and who has not ap-
pealed) are jointly and severally liable to the plaintiff for her
entire damages, with interest. The judgment is to be supple-
mented by ordering dismissal of the complaint as against
Ray Stone Pontiac. Other portions of the judgment are
affirmed. No party is to have costs of appeal.

*So ordered.*

---

[10]We mention two: (1) Hastings & Koch's argument that the judge im-
properly instructed the jury that negligent entrustment could be found if
Hastings & Koch "knew *or should have known*" of Nowak's unfitness to
drive has some merit but was not called to the attention of the judge and is
therefore waived. *Weeks* v. *Harbor Nat. Bank*, 388 Mass. 141, 147
(1983). *Zedros* v. *Kenneth Hudson, Inc.*, 11 Mass. App. Ct. 1007, 1008
(1981). Such an instruction, in any event, would have had to be qualified
by the rule discussed above to the effect that a violation of G. L. c. 90,
§ 12 — permitting an unlicensed driver to operate a motor vehicle — may
warrant a finding of negligent entrustment, whether or not the owner knew
that the entrustee was unlicensed. (2) The argument of Mitchell's counsel
to the jury, suggesting a particular numerical breakdown of percentages of
fault that they might find, did not in the circumstances represent argument
not based on the evidence or an expression of personal opinion. The case
relied on by Mitchell, *Gardner* v. *State Taxi, Inc.*, 336 Mass. 28, 30-31
(1957), was based on the fact that the particular damage figures suggested
by plaintiff's counsel, and his stated basis for calculating them, had no
basis at all in the evidence heard by the jury.