JOSEPH SOUSA *vs.* MANUEL C. IROME.

Bristol.    October 27, 1914. — November 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* In entrusting firearms to minor. *Parent. Evidence,* Of reputation, Manner and emphasis of witness. *Witness.*

If a father, knowing that his son sixteen years of age is an unfit person to be entrusted with firearms, allows him to possess and control a gun and its ammunition, and thereupon the son wrongfully or negligently shoots and kills another boy about his own age, the father of the boy who was shot may maintain an action of tort against the father of the boy that shot him to recover for the loss of his services.

In an action, by the father of a boy that was shot and killed by another boy of about his own age, against the father of the boy that shot and killed him, to recover for the plaintiff's loss of his son's services by reason of the defendant's negligence in permitting his son to possess and control a gun and ammunition, having knowledge of his unfitness to possess them, a police officer, who has testified that he knows the reputation of the defendant's son as to the use of a gun at the time of the shooting, may be allowed to testify that "his reputation was that he handled this gun in a very careless manner at different times in the neighborhood;" but this evidence is admissible only to show the reputation of the defendant's son before he shot the plaintiff's son and can be considered by the jury only upon the issue whether before that shooting the defendant had knowledge or reason to know that his son was careless with a gun.

Where at the trial of an action, in which it was material to show that the defendant had knowledge or notice that his son was careless with a gun before he shot the plaintiff's son, a policeman had testified that the defendant's son had the reputation of such carelessness, and on being asked upon his cross-examination, "You cannot say that these men came to you before this accident and told you, can you? and be sure of it?" answered, "No, positively

no," this answer does not show necessarily that the witness's knowledge of the boy's reputation was acquired after the accident, because his manner and his emphasis on the words may have indicated that his meaning was merely that he could not state positively whether his information was acquired before the accident, and the interpretation of his words as spoken by him on the witness stand was for the jury.

TORT for the loss of the services of the plaintiff's minor son, Joseph Sousa, junior, by reason of his being shot and killed by the defendant's son Flam. Writ dated January 17, 1911.

The declaration alleged that the defendant's son Flam was a minor sixteen years of age and was not a proper person to have possession and control of a gun, which the defendant well knew or in the exercise of reasonable care should have known, and that the defendant negligently gave to his son Flam and suffered him to have in his possession and control a gun and ammunition to be fired from it, and that Flam on December 3, 1910, negligently fired the gun and shot and wounded the plaintiff's son Joseph Sousa, junior, who in consequence thereof suffered in body and mind and died on December 28, 1910, whereby the plaintiff was put to great expense for medical and other care and attendance and was deprived of the wages and services of his son, who was about fifteen years of age.

The answer was a general denial.

In the Superior Court the case was tried before *Sanderson,* J. The character of the evidence and the essential facts which could have been found upon it are described and stated in the opinion. It appeared that Flam's full name was Flam Correa Irome and that he often was called Flam Correa. One Donohue, a police officer of the town of Somerset, who was called as a witness by the plaintiff, was asked the question, "Do you know what the reputation of Flam Correa was as to the use of a gun at the time of the shooting?" Subject to the defendant's exception, he answered, "Yes, I do." He then was asked, "What was his reputation as to the use of a gun?" and, subject to a like exception, answered, "His reputation was that he handled this gun in a very careless manner at different times in the neighborhood." On cross-examination the witness testified that he heard one Thurber say "that Flam's reputation was bad before the shoot-

ing as to the manner of handling a gun," and that one Butler
"made complaint to him; that this was about the time of the
shooting; that he did not go to his father about it." He then
was asked, "Thurber and Butler before this accident both told
you that Flam was handling a gun about there?" and answered,
"On or about." Being asked, "On or about the time of the
shooting?" he answered, "Yes, they are two of the men. I
don't know as I recall now any others." Then he was asked the
final question, referred to in the opinion, "You cannot say that
these men came to you before this accident and told you, can
you? and be sure of it?" and answered, "No, positively no."
Thurber and Butler both had testified as witnesses for the
plaintiff.

At the close of the evidence the defendant, among other rul-
ings which were made, asked the judge to rule as follows:

"1. Upon the whole case the plaintiff cannot recover."

"8. If the plaintiff knew the boys and that they had gone off
into the woods with the guns, and could have prevented them,
he cannot recover."

The judge refused to make either of these rulings. In regard to
the subject matter of the ruling numbered 8, the judge instructed
the jury as follows: "It is said by one of the witnesses, or claimed
by somebody in the course of the trial, that the father of the boy
who is dead met them when they were on their way on a hunting
trip, and saw the boys going off with the gun; and it is claimed
that you should say that if he did permit his boy to go in that
way, that, in itself, was a careless thing to do, and so connected
with the boy's later injury that the father should not be permitted
to recover. I leave that whole question to you. If any careless
act on the part of the boy or on the part of the father, who is
bringing this suit, contributed to the boy's accident and injury,
then he could not recover."

In regard to the evidence of reputation the judge instructed
the jury as follows: "But on that I ought to say, if the police
officer's testimony means that because of this shooting, or as a
result of investigation after the shooting, he discovered things
as to the boy then, then that reputation and evidence ought not
to go in at all. It is only if the boy had a reputation for being a
careless boy with a gun before this accident, that it becomes

competent evidence; then only on one theory, not at all to prove the boy was careless in this case, it would not be competent on that issue, only on this, if there was such a reputation, such talk in the community, it is for you to say whether the father would or would not have had knowledge of it if people generally had; that is, as bearing on the father's knowledge of the reputation. If you find it bears at all on the case, it bears only on that issue of whether the father knew that the boy was careless with a gun." The defendant excepted to this part of the charge.

The jury returned a verdict for the plaintiff in the sum of $900; and the defendant alleged exceptions.

*A. S. Phillips,* (*T. C. Crowther* with him,) for the defendant.

*R. A. Dean,* for the plaintiff.

SHELDON, J. While the evidence was meagre and the case comes near to the border line, we cannot say that there was error in submitting the issues to the jury. They could find that the defendant was negligent in allowing his son Flam to have the gun and ammunition, that Flam was not a fit person to be trusted with articles of so dangerous a character, and that Flam's act was either wrongful or negligent and was one which the defendant ought to have foreseen and guarded against. In that event the defendant was liable for the natural consequences that followed directly from his negligence. *Horan* v. *Watertown,* 217 Mass. 185, 186.

There was evidence of the due care of both the plaintiff and the plaintiff's son.

The evidence as to Flam's reputation about the use of a gun was admitted properly upon the question whether the defendant knew or ought to have known that it was unsafe and dangerous to allow Flam to have and use a gun. The jury were told that this evidence could be considered only if it showed that before the accident Flam had the reputation of being careless with a gun, and that in any event it could be considered only upon the issue of the defendant's knowledge of that fact. That comes within the principle of such cases as *Monahan* v. *Worcester,* 150 Mass. 439; *Killam* v. *Peirce,* 153 Mass. 502, 506; *Carson* v. *Canning,* 180 Mass. 461; and *Palmer* v. *Coyle,* 187 Mass. 136, 140.

The police officer could testify as to that reputation. He had

testified that he knew it. His testimony on cross-examination did not show conclusively that all his knowledge had been acquired since the accident. His answer, "No, positively no," to the final question whether he could say that his information was before the accident, may have been shown by his manner and his emphasis on the words to mean that he could not say this positively. On that, the inference was for the jury.

*Exceptions overruled.*