TRUSTEES OF THE CHURCH OF THE DISCIPLES *vs.* BENEVOLENT FRATERNITY OF UNITARIAN CHURCHES & others.

Suffolk.   February 8, 1944. — January 8, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Trust*, Express trust: construction; Trust for religious purposes.  *Religion.  Equity Pleading and Practice*, Appeal.  *Error*, Whether error harmful.

An interlocutory decree overruling an exception to the exclusion of certain evidence by a master hearing a suit in equity was not to be reversed for error in the exclusion where it appeared that, in view of facts established by the master's report, the question raised by the exception was unimportant.

In a deed under which certain real estate was held in trust to permit a certain religious society "to have the entire use of the premises for public worship and for other purposes" in a meetinghouse to be built on the premises, a provision that the trustees, with the concurrence of the society, should have a right to sell the premises, the net proceeds to be "appropriated towards providing another place of worship for said society to be held upon the same trusts as stated herein," did not empower the trustees to retain the proceeds of such a sale and pay the income to another church for that church's general purposes pursuant to an agreement of affiliation with it under which, without any merger of the two organizations or loss of identity of the society as a separate organization, the members of the society were given the right to attend services conducted by the minister of the other church in its church edifice.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 25, 1941, for approval by the court of the ".Agreement of Affiliation" described in the opinion and "for such other and further orders and decrees with reference to the disposition of said fund as in the opinion of the court may be necessary."

The case was reserved and reported by *Qua*, J.

The case was argued at the bar in February, 1944, before *Field*, C.J., *Donahue*, *Lummus*, & *Dolan*, JJ., and after the

retirement of *Donahue,* J., was submitted on briefs to all the Justices except *Ronan,* J.

*R. L. Robbins,* for the plaintiffs.

*A. Marshall,* for The Proprietors of Arlington Street Church.

*H. R. Scott,* for Benevolent Fraternity of Unitarian Churches.

No argument nor brief for the Attorney General.

LUMMUS, J.  The plaintiffs ask instructions as to the disposition of a fund derived from a sale of the church building and land formerly held by them at the corner of Peterborough and Jersey streets in Boston.  They pray that a certain "agreement of affiliation" with The Proprietors of Arlington Street Church, entered into by them under the authority of a vote of the members of the Church of the Disciples, be approved by this court.  The defendant Benevolent Fraternity of Unitarian Churches, a corporation, answered, claiming the fund.  The Proprietors of Arlington Street Church, a corporation, answered, opposing the claim of the Benevolent Fraternity of Unitarian Churches.  The Attorney General, answering, took no position as to that claim.  The facts appear in a master's report, to which, however, the defendant Benevolent Fraternity of Unitarian Churches alleged exceptions.  A single justice reserved the case without decision for the full court.

Exceptions are argued to the exclusion by the master of evidence offered by the defendant fraternity of alleged admissions by silence by persons connected with the defendant The Proprietors of Arlington Street Church, to the effect that the Church of the Disciples is defunct.  We have recently expressed our disinclination to enlarge the scope of admissions by silence.  *Commonwealth* v. *Boris,* 317 Mass. 309, 317.  The opinions of persons as to the vitality of the Church of the Disciples are of slight importance since we know the actual facts.  In equity, especially, a decree is not reversed even for error with respect to unimportant questions of evidence.  *Indrisano's Case,* 307 Mass. 520, 523.  *Caccamo's Case,* 316 Mass. 358, 363.  The exceptions to the master's report were impliedly over-

ruled by the interlocutory decree confirming that report, and that interlocutory decree is affirmed. There is nothing in the appeal from the interlocutory decree denying the motion of the defendant fraternity to recommit the master's report, and that interlocutory decree is affirmed.

Coming to the merits, the material facts are as follows. The defendant fraternity is a religious and charitable corporation chartered by St. 1839, c. 24, for "the moral and religious instruction of the poor in the city of Boston." In 1915, under St. 1908, c. 163 (see also St. 1915, c. 205), its name was changed to its present name. "The Proprietors of Arlington Street Church" is a religious society chartered by St. 1805, c. 19, under the name of "The Proprietors of the Meeting-house in Federal Street in the Town of Boston." Its name was changed to the present name by St. 1862, c. 11. It worships according to the Unitarian faith.

On February 17, 1841, the Reverend James Freeman Clarke, a well-known Unitarian clergyman in Boston, then about thirty years old, organized the Church of the Disciples. What was new in the management of that church was that all seats were free. There were no pew-holders, and pews were neither rented nor taxed. All adult members of the church had a right to vote in parochial matters. The policy of free seats was modified somewhat in 1848 because of the need of raising money to pay debts incurred in erecting a church building on Beacon Hill, but that policy was restated "so far as may be reasonably practicable." The church had in succession various church buildings, the last of which, at the corner of Peterborough Street and Jersey Street, it used until it was sold in May, 1941. Title to each of the church buildings was held by the petitioning trustees or their predecessors.

The site of the next to the last church building, the one at the corner of Warren Avenue and Brookline Street in Boston, was conveyed to the predecessors of the plaintiff trustees by the Reverend James Freeman Clarke on June 12, 1868, in trust "to permit the said Religious Society called the Church of the Disciples, to have the entire use of the premises for public worship and for other purposes

while the said society shall conduct its concerns substantially on the following principles." Those principles were then stated substantially as follows, (1) that the society shall build a meetinghouse on the premises and worship there, (2) that the society shall so far as practicable meet its expenses by voluntary donations, and at least one third of the seats shall be free, (3) that the society shall pay the expenses of the buildings and save the trustees harmless from liability and expense, and (4) that the society shall be understood to be composed of those persons who have signed the covenant of the church now under the pastoral charge of the Reverend James Freeman Clarke and of all other persons who may become members by signing that covenant, which required adherence to no doctrine but was simply to the effect that "our faith is in Jesus as the Christ the Son of God," and that the covenantors form a church of His disciples "that we may co-operate together in the study and practice of Christianity," in which church all adult members shall have the right to vote.

Then followed a provision giving nine or more trustees, with the concurrence of the society, the right to sell the premises, the net proceeds to be "appropriated towards providing another place of worship for said Society to be held upon the same trusts as stated herein." Later in the deed was the following: "And in case it shall ever happen that any nine or more of the trustees, for the time being shall be of the opinion that the said society has failed in any material respect to conduct its affairs upon the principles before stated the said nine or more trustees are hereby authorized while said failure shall continue and after six months' previous notice in writing of their intention so to do communicated so to personally [*sic*] to three or more members of the church and advertised not less than three times in three or more newspapers in the City of Boston, to sell and convey the granted premises in fee simple . . . and the net proceeds of such sale to pay over to the Benevolent Fraternity of Churches [a respondent]" if it shall then exist, and otherwise "to such persons or institutions of a religious and benevolent Character, and for the benefit

of such religious and benevolent purposes as they may deem expedient."

In 1908 a sale was made of the church property at the corner of Warren Avenue and Brookline Street, which had been conveyed to the trustees by the deed of June 12, 1868, the conditions of the power of sale under that deed having been satisfied. The proceeds of that sale, amounting to $35,000, were "appropriated towards providing another place of worship for said Society to be held upon the same trusts" as required by the deed of 1868. The new place of worship, erected on land bought on April 23, 1908, was at the corner of Peterborough Street and Jersey Street, and title thereto was taken in the plaintiff trustees or their predecessors "upon the same trusts as are stated in said Deed from James Freeman Clarke, dated June 12th, 1868," to the extent of $35,000. In accordance with the deed of April 23, 1908, the trustees made a sale of the last mentioned place of worship on May 10, 1941, and have on hand the net proceeds of the sale, amounting to $33,511.50, which sum, being less than $35,000, is all subject to those "same trusts."

As early as 1940 it had become evident that the membership, the attendance and the income of the Church of the Disciples had diminished to the point where it could not meet current expenses or go on as a completely independent religious organization. Most portentous were the facts that only about sixty people remained to attend services, that they were older people without children of Sunday School age, that the Sunday School had become too small to continue, and that the church lacked any group or society of young people. On March 26, 1941, at a meeting of the church it was voted that the church associate itself with the Arlington Street Church, "and that the trustees be authorized to secure the necessary legal aid in the matter." It was voted "to omit the usual Sunday morning services on and after April 20, 1941." On April 23, 1941, at a meeting of the trustees at which nine trustees out of eleven were present, it was unanimously voted "that in the opinion of the trustees the society has not failed in any

material respect to conduct its affairs upon the principles stated in said deed from James Freeman Clarke but that, on the contrary, the proposed agreement of affiliation with the Arlington Street Church is in conformity with and in furtherance of carrying out the said principles, including the providing of another place of worship, and specifically that the net proceeds from the sale of the church property at the corner of Peterborough Street and Jersey Street in said Boston may properly be held as provided in said agreement of affiliation by the trustees and the income therefrom paid over from time to time to the treasurer of the Arlington Street Church for general church purposes."

Immediately afterwards on the same day, April 23, 1941, at a meeting of the members of the Church of the Disciples, the proposed "agreement of affiliation" was unanimously approved and adopted, and the trustees were requested and authorized to execute it on behalf of the church. On May 13, 1941, it was executed on behalf of the Church of the Disciples by the plaintiff trustees, and on behalf of The Proprietors of Arlington Street Church by its prudential committee. It provided for continuance of the separate existence and activity of both churches as legal and business organizations, with joint religious services, but without precluding separate services, meetings and activities. The income of the funds of the Church of the Disciples was to be paid over from time to time "so long as the two churches remain affiliated" to the Arlington Street Church for general church purposes, together with such of the other income of the Church of the Disciples as it may determine. The same minister was to be the minister of each church. The affiliation was terminable by either party upon six months' notice. The "agreement of affiliation" was to become operative upon "approval" of this court, which meant apparently a decision that the petitioning trustees had power to enter into it.

After the "agreement of affiliation" there was no change in the organization of the Church of the Disciples. The committees remain the same. Delegates are still named to

various denominational bodies. The treasury remains separate from that of the Arlington Street Church, and contributions are voted, to be made to that church, to the common minister, and to denominational funds. A church supper and a social gathering, limited to members of the Church of the Disciples, have been held, and the latter was attended by fifty-seven members. The Church of the Disciples retains its original covenant of membership, but no one has applied for membership since the "agreement of affiliation." A member of the Church of the Disciples has the right under the "agreement of affiliation" to attend the joint services, without joining the Arlington Street Church. But a person may be a member of two Unitarian churches. Many members of the Church of the Disciples have joined the Arlington Street Church. Although pew-holders in the Arlington Street Church are still legally assessable, more than one third of the seats are now free, and pew rentals have been wholly abolished. Certain voting rights in that church, it is true, are vested in the pewholders, but the "agreement of affiliation" did not give to members of the Church of the Disciples any membership or voting rights in the Arlington Street Church. The master found that the trustees acted in good faith in voting as they did on April 23, 1941. He found that no merger of the two churches was intended, but that each intended to retain its own organization and officers and the control of its own property and affairs.

It seems to us that the trust provisions contained in the deed of June 12, 1868, which were incorporated by reference in the deed of April 23, 1908, are not satisfied by using the fund of $33,511.50 or the income thereof for the purpose of obtaining the right to use the Arlington Street Church meetinghouse for joint services. That fund, the proceeds of the sale of the latest meetinghouse owned by the plaintiffs, must under the terms of the deeds be "appropriated towards providing another place of worship for said society." If the provision had stopped there, it would be possible to hold that ownership of the "place of worship" was not required. And it is true that in one

contingency, that of the lease of the meetinghouse, the deeds contemplated that the society should continue to function without owning a meetinghouse, perhaps in hired quarters. But the case before us is that of a sale of the meetinghouse, and in that case the provision that the proceeds must be "appropriated towards providing another place of worship for said society" is immediately followed by the restrictive words "to be held upon the same trusts as stated herein." Thus it appears that "providing" another place of worship means buying or building, and not any such arrangement as has been entered into.

We do not decide at this time whether the situation is such that the trustees are under a duty to give the notice and take the action that would cause the trust fund to pass to the defendant fraternity. Neither do we decide whether a persistent unjustified refusal to take that action would be legally equivalent to taking it. We limit this decision to instructing the trustees upon the question specifically asked in their bill, and instruct them that the agreement of affiliation does not conform to the trust upon which they hold the fund in question, and cannot lawfully be performed.

The allowance of costs as between solicitor and client, to be paid out of the fund, is to be in the discretion of a single justice.

*So ordered.*