VERONICA A. LEONE *vs.* RICHARD R. DORAN & others.

Plymouth.   November 8, 1972. — January 22, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Negligence*, Motor Vehicle, Violation of law.  *Motor Vehicle*, Permission to operate, Entrustment.  *Evidence*, Admissions and confessions, On cross-examination, Collateral matter, Of ownership, Relevancy and materiality.  *Practice, Civil*, Argument by counsel.

In an action of tort to recover damages for personal injuries arising from the operation of an automobile, negligence of the defendant could be inferred if he violated G. L. c. 90, § 12, which prohibits any person from allowing a motor vehicle owned by him or under his control to be operated by any person who has no legal right to do so or in violation of c. 90, or, aside from any violation of c. 90, if the defendant knowingly allowed an incompetent operator to drive the automobile; and in either case, it was necessary for the plaintiff to show, among other things, that the defendant owned or controlled the automobile and gave the driver permission to operate it.  [6–7]

G. L. c. 90, § 12, prohibiting a person from allowing a motor vehicle owned by him or under his control to be operated by any person who has no legal right to do so or in violation of c. 90 is a criminal statute and must be strictly construed even when it is sought to be applied in a civil case.  [8]

Apart from the owner or person in control of a motor vehicle permitting its operation by one unlicensed to operate it, the owner or person in control is not guilty of a violation of G. L. c. 90, § 12, through having allowed it "to be operated . . . in violation of" c. 90 unless he knows that the operation will be in violation of c. 90, nor is his permission to operate evidence of negligence on his part toward one suffering injuries through the operation unless, also, there is a causal connection between violation of c. 90 by the operator and such injuries; the mere fact that, because of the reputation of the operator, a violation of c. 90 could conceivably

1

or even probably occur during the operation is not enough to show a violation of § 12 by the owner or person in control of the vehicle. [8–9]

At common law, apart from G. L. c. 90, § 12, the owner or a person in control of a motor vehicle who entrusts its operation to another may be held liable to one injured through the operation for negligent entrustment upon proof that the operator was incompetent and that the owner or person in control knew of his incompetence. [11–12]

Evidence offered by the plaintiff in an action and admitted only for impeachment purposes and not as constituting proof on a certain substantive issue was improperly argued to the jury by the plaintiff's counsel as constituting such proof. [14–15]

If a party at a trial cross-examines a witness on a collateral matter, the party cannot contradict the witness's answer. [15]

In an action for injuries arising from the operation of an automobile, testimony by a police officer, that he heard the operator of the automobile, purportedly speaking to the defendant on the telephone, say that he had had an accident with "your" automobile and that later the defendant came to a police station and saw the officer but said nothing about the ownership of the automobile, was inadmissible, on the issue of ownership or control of the automobile, as an admission by the operator in behalf of the defendant in the absence of a showing that the operator had authority to make statements in behalf of the defendant, or as an admission by the defendant himself by silence. [16]

Argument of the plaintiff's counsel to the jury at the trial of an action was highly improper in placing before the jury matters, prejudicial to defendants, which were irrelevant to the issues and not in evidence or to be inferred from the evidence. [16–19]

TORT.   Writ in the Superior Court dated January 4, 1963.

The action was tried before *Barron*, J.

*James W. Smith (James J. Twohig, George A. Mc-Laughlin, Sr., & George A. McLaughlin, Jr.,* with him) for the defendant Patrick J. McDonough.

*Lovell S. Spaulding* for the plaintiff.

HENNESSEY, J.   This is an action in tort to recover damages for personal injuries sustained by Veronica A. Leone (the plaintiff) against the defendants, Richard R. Doran, John F. Ridge and Patrick J. McDonough. The three defendants joined in the consolidated bill of exceptions which is now before us.   The plaintiff brought this action through her mother and next friend, Veronica M. Cadose.   The accident in which the plaintiff

sustained her injuries resulted from a collision of two automobiles, one driven by the defendant Doran and the other by the plaintiff.

The action against McDonough is based solely on the claim that the automobile which was driven by Doran was either owned or controlled by McDonough and that he had allowed Doran to operate the motor vehicle in violation of c. 90 of the General Laws. No claim was made that McDonough was present in the automobile when the accident occurred, and a count against McDonough based upon a theory of an agency relationship between him and Doran was waived by the plaintiff in open court.

At the close of the evidence, McDonough moved for a directed verdict which was denied and an exception was saved. The jury returned a verdict against each of the defendants for $650,000. After the return of the verdicts, the judge reserved leave under G. L. c. 231, § 120. Subsequently, McDonough moved for the entry of a verdict in accordance with leave reserved, the motion was denied and an exception was saved. McDonough's motion for a new trial was also denied. The case comes to this court principally upon exceptions taken by McDonough to the denial of his motions for a directed verdict and for entry of a verdict under leave reserved; to the denial of his motion for a new trial; to numerous alleged errors on the part of the trial judge in her rulings relative to the introduction of evidence and allowance of exhibits; to her refusal to make a statement to the jury correcting misstatements made by the plaintiff's counsel in his closing argument; and to numerous alleged errors on the part of the trial judge in her instructions to the jury.

The defendants Ridge and Doran joined in the bill of exceptions, and asserted numerous exceptions. Neither Ridge nor Doran has filed a brief with this court, nor has any motion for extension of time or other relief been filed with this court. It is appropriate for us to dismiss the bill of exceptions as to Ridge and Doran and to direct

that judgment shall enter for the plaintiff on the jury verdicts against Ridge and Doran, and we have entered that order at the conclusion of this opinion. Accordingly, we have reviewed only the exceptions asserted by Mc-Donough.

In so far as we can do so from the confused record, we summarize certain of the facts, with emphasis on the evidence which bears on the alleged legal responsibility of McDonough.

The plaintiff was seriously injured in a collision of two automobiles at an intersection in Scituate on August 11, 1962. The plaintiff was the operator of one of the vehicles and the other automobile was driven by Doran. There was evidence which tended to show that Doran was operating the vehicle while under the influence of intoxicating liquor, that he drove into the intersection without stopping at a stop sign, and that he may have been in other respects operating the automobile in violation of law.

The principal evidence as to McDonough's alleged ownership or control of the automobile driven by Doran was as follows. The automobile was registered in the name of the defendant Ridge. Ridge purchased the automobile from Stilphen Motors in Dorchester in 1960. In purchasing the automobile, Ridge traded in his 1956 Ford and agreed to pay instalments totaling $2,139. Ridge alone paid the instalments on the automobile. Ridge alone paid the excise taxes on the automobile. The automobile was insured in the name of Ridge. Ridge never gave McDonough, or any member of his household, a duplicate set of keys to the automobile. Prior to the accident, the automobile was on many occasions parked in front of McDonough's house. A Governor's Council plate was seen attached to the automobile prior to the accident on various occasions and was found on the ground at the scene of the accident. McDonough was a member of the Governor's Council and knew Ridge had the plate. On various occasions the automobile was seen being driven

by Ridge and Doran and less frequently by the two sons of McDonough, and once or twice by McDonough himself. McDonough was occasionally a passenger in the automobile. Ridge worked periodically for McDonough in 1961 and early 1962 and on occasion ran errands for McDonough. In 1961 and 1962, gas and regular service for the car were purchased on the credit of P. J. McDonough Insurance Agency, Inc., at a gasoline station operated by Herbert Carl. Ridge is related to McDonough and during the summer and fall of 1961 Ridge slept at the McDonough residence approximately three nights each week. During the summer of 1962 he stayed three or four days a week. Ridge also testified that he used McDonough's Governor's Council plate in order to obtain parking privileges around the State House. McDonough regularly used automobiles which he had leased, and these vehicles were not registered in his name. McDonough was in the insurance business.

It appears that the only evidence offered as to Doran's incompetence as a driver, and McDonough's knowledge thereof, was the testimony of several witnesses who stated Doran's reputation in the community of Scituate as: "a reputation for drinking, and being a reckless driver, fast driver"; "a wild kid . . . wild boy"; "driving automobiles around the town at fast rates of speed, and driving while intoxicated"; "noted to have a heavy foot . . . speeding . . . known to drink quite excessive [*sic*]." It was shown that McDonough had been a summer resident of that community for many years prior to the accident.

1. The trial of this action consumed more than five weeks. It generated a transcript of more than 3,500 pages, and more than 800 exceptions were claimed by the defendants. The trial judge died after the trial. The bill of exceptions and the contents of the record on appeal were settled, with great difficulty, by another Superior Court judge.

McDonough asks that judgment be entered for him on the ground that the judge was in error in failing to allow

his motions for directed verdict and for entry of a verdict under leave reserved. Alternatively, McDonough asks that he be granted a new trial.

We have found numerous errors prejudicial to Mc-Donough in the rulings of the judge. These concerned rulings on evidence, instructions to the jury, and the failure to cure the unfair tactics of the plaintiff's counsel in the presentation of evidence and argument to the jury. Chief among these errors, as more particularly described later in this opinion, were the rulings related to whether McDonough must be shown to have had actual prior knowledge of the operator Doran's incompetence or his violation of law.

We conclude that justice will best be served if we now order a new trial of the action against McDonough upon all issues. We are unable for several reasons to give appropriate consideration to McDonough's contention that he is entitled, by reason of the insufficiency of the proof against him, to have judgment ordered in his favor. The record before us, partly by reason of the judge's death, is not dependable. It is obvious that the judge's erroneous rulings on evidence guided the proof of the case into incorrect channels from almost the beginning of the trial. At several important junctures in the transcript of proceedings it is uncertain, from the nature of the testimony as appraised in the light of the judge's rulings and the defendant's exceptions, what the net effect in proof was.

From the foregoing appraisal it is clear that, in awarding a new trial rather than ordering judgment for Mc-Donough, we intend no implied ruling as to whether the plaintiff sustained her burden of proof on any one of the vital issues in the case.

We turn now to a consideration of the principal issues which may recur at a new trial of the case.

2. *Ownership or Control; Permission.*

In subsequent discussion in this opinion, we state that a defendant's negligence may be inferred (1) by reason of his violation of G. L. c. 90, § 12, or (2) aside from any

violation of the statute, by reason of his knowingly allow-
ing an incompetent operator to drive the defendant's
vehicle. In either case, it is necessary for the plaintiff to
show, among other things, that the defendant owned or
controlled the motor vehicle concerned, and that the
defendant gave the driver permission to operate the
vehicle.

There is no requirement to show, as in a case relying
on a master and servant relationship between defendant
and operator, that the defendant had the right to control
the operator's general activities. See *Konick* v. *Berke,
Moore Co. Inc.* 355 Mass. 463, 467. There is a necessity
to show ownership of the vehicle by the defendant, or at
least to show that he had such a sufficient proprietary in-
terest as to permit the use of the vehicle by others. See
*Downey* v. *Bay State St. Ry.* 225 Mass. 281, 284; *Hurnanen*
v. *Nicksa,* 228 Mass. 346, 350; *Shufelt* v. *McCartin,* 235
Mass. 122; *Harlow* v. *Sinman,* 241 Mass. 462, 463–464;
*Burns* v. *Winchell,* 305 Mass. 276; *MacKenzie* v. *Mac-
Kenzie,* 306 Mass. 291; *Coyle* v. *Swanson,* 345 Mass. 126.
A conclusion may be warranted that someone other than
the registered owner is the actual owner of the vehicle.
See *Karpowicz* v. *Manasas,* 275 Mass. 413, 419; *Mac-
Kenzie* v. *MacKenzie,* 306 Mass. 291.

Additionally, it must be shown that the person who
owned or controlled the vehicle gave specific or general
permission to the operator to drive the automobile. See
*Dufour* v. *Arruda,* 299 Mass. 46; *Strogoff* v. *Motor Sales
Co. Inc.* 302 Mass. 345, 348–349; *Drescher* v. *Travelers
Ins. Co.* 359 Mass. 458, 459.

3. *Violation of G. L. c. 90, § 12.*

The single count of the declaration which asserts a
cause of action against McDonough alleges in substance
that he allowed a vehicle owned or controlled by him to
be operated in violation of c. 90, and that the vehicle was
negligently operated and thereby caused the plaintiff's
injuries.

First of all, we observe that the allegations of the dec-

laration were deficient in that there is no assertion that McDonough was negligent. General Laws c. 90, or more specifically § 12 of that chapter, creates no civil cause of action. Violation of § 12 by one who owns or controls an automobile may, however, be shown as some evidence of the defendant's negligence. Those specific violations of c. 90 by the operator, which were known to the owner, must also be shown to be causally related to the plaintiff's injuries. *Foschia* v. *First Natl. Stores, Inc.* 290 Mass. 90, 92. *Baggs* v. *Hirschfield*, 293 Mass. 1, 3. *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419, 423–424.

The failure to allege negligence against McDonough can be corrected by amendment of the declaration, in the discretion of a judge of the Superior Court, as shown in part 7 of this opinion. Much more significant is our conclusion, as shown below, that the judge literally and erroneously charged the jury in accordance with the defective allegations of the declaration.

General Laws c. 90, § 12, is a criminal statute and must be strictly construed, even though it is sought to be applied here in a civil case. *Commonwealth* v. *Hayden*, 211 Mass. 296. *Libby* v. *New York, N. H. & H. R. R.* 273 Mass. 522, 525–526. *Commonwealth* v. *Paccia*, 338 Mass. 4, 6. See *Nickerson* v. *Boston Elev. Ry.* 319 Mass. 220, 223.

The relevant portion of G. L. c. 90, § 12, provides as follows: ". . . No person shall allow a motor vehicle owned by him or under his control to be operated by any person who has no legal right so to do, or in violation of this chapter." Thus, a person who owns or controls a motor vehicle may violate the statute in one of two ways: (1) if he allows the vehicle to be operated by one who has no legal right so to do, and (2) if he allows the motor vehicle to be operated in violation of any of the other provisions of c. 90.

The requisite proof that one who owned or controlled a motor vehicle allowed it to be operated by one who had no legal right so to do is that the operator was not properly licensed. *Gordon* v. *Bedard*, 265 Mass. 408, 410. *Ken-*

*yon* v. *Hathaway*, 274 Mass. 47, 50. *Leblanc* v. *Pierce Motor Co.* 307 Mass. 535, 536. A violation of § 12 can warrantably be found in a case where an unlicensed person was allowed to drive even though the defendant owner of the motor vehicle did not know that the person allowed to operate the motor vehicle was unlicensed. *Fitiles* v. *Umlah*, 322 Mass. 325, 326.

Aside from the case in which the owner or person in control of a vehicle permits its operation by an unlicensed operator, any other violation of c. 90 during the permitted operation of the vehicle will attach criminal responsibility to the owner or person in control only if he had knowledge of the violation. In *Leblanc* v. *Pierce Motor Co.* 307 Mass. 535, 537–538, we said, "There was evidence that Metivier's license had been suspended and not restored, and also that Metivier when allowed to take the automobile, *was under the influence of liquor to such an extent that it could have been found that Pierce knew of it.* Even if Pierce did not know that Metivier had no license, Pierce none the less violated § 12 in allowing an unlicensed person to operate" (emphasis supplied). Stated another way, criminal responsibility can attach to the owner or person in control of the vehicle only if the evidence warrants a conclusion that, at the time he permitted the use of the automobile, he was aware of circumstances which made it inevitable that the automobile would be operated in violation of c. 90.

We do not accept the plaintiff's contention that a defendant who owns or controls a motor vehicle, and who has no knowledge of violations of c. 90 by the operator, may still be held to have violated § 12 where, because of the operator's reputation, a violation of c. 90 could conceivably or even probably take place in the course of driving. The judge erroneously charged the jury to this effect. The language of § 12 does not support such an interpretation.

In view of our construction of the meaning of § 12 we do not reach a consideration of McDonough's argument that construing the statute in the manner urged by the

plaintiff would render the statute, because of its penal nature, unconstitutional for vagueness and as an improper exercise of the police power. See *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521; *Commonwealth* v. *Oliver,* 342 Mass. 82, 88; *Alegata* v. *Commonwealth,* 353 Mass. 287, 298.

The judge's instructions concerning the applicability of G. L. c. 90, § 12, were repetitious, discursive and confusing. It is impossible to decide now what precise meaning may have been conveyed to the minds of the jurors. Additionally, the charge was erroneous in that it permitted the jury to find liability against McDonough upon proof of any violation by the operator Doran of any provision of G. L. c. 90.

The instructions contained an itemization of various provisions of c. 90 ("we have thirteen here") such as the law controlling speed of a vehicle; putting on headlights; stopping at stop signs; driving to the right of the center of the road; driving negligently so as to endanger; and the law of right of way at intersections.

The instructions reveal no judicial consideration as to whether the evidence warranted an inference that there were violations by the operator Doran of each and all of the c. 90 provisions which were submitted for the jury's consideration. As to some of the provisions, the evidence in actuality did not warrant a conclusion that there was a violation by Doran.

The jury were not instructed, as they should have been, that a violation of c. 90 by the operator Doran is evidence of negligence only if it is found to be causally related to the accident and the plaintiff's injuries. Essentially, the charge erroneously permitted the jury to find liability against McDonough if the operator Doran in any way violated any part of c. 90, and without reference to the causal relationship between the unlawful conduct and the accident. The prejudicial error in this aspect of the instructions is particularly clear in that the jury were expressly told that they could hold McDonough liable if they merely found that there was a violation of c. 90, § 2,

by reason of having a Governor's Council plate wrongfully attached to the motor vehicle. Such a circumstance as a matter of law could have no causal relationship to the accident. Permitting an unlicensed operator to drive a vehicle is clearly distinguishable in the light of one of the obvious purposes of G. L. c. 90, § 12. "Negligent operation of an automobile endangering the safety of other travellers is likely to follow if an unlicensed person is given complete control of its operation." *Gordon* v. *Bedard*, 265 Mass. 408, 412.

4. *Negligent Entrustment of Motor Vehicle.*

Although supporting statements in our cases have been few, we conclude that negligent entrustment of a motor vehicle as a basis of liability against the owner or person in control of the motor vehicle (hereinafter also referred to as the owner) may be shown under the common law,[1] and without reference to any violation of G. L. c. 90, § 12. *Carter* v. *Towne*, 98 Mass. 567. *Woodman* v. *Haynes*, 289 Mass. 114, 117. See *Zarski* v. *Creamer*, 317 Mass. 744; *Ellingsgard* v. *Silver*, 352 Mass. 34; Restatement 2d: Torts, § 390. See also Restatement 2d: Torts, §§ 307 and 308.

The principal question is: What evidence is sufficient to charge such an owner with liability for the negligent, reckless or unlawful driving of one to whom he lent the vehicle? Preliminarily, we distinguish between proof of the driver's incompetence, and proof of the defendant owner's knowledge of that incompetence. Both factors are necessary elements of the plaintiff's proof. We observe, also, that our discussion has no reference to liability of a vehicle owner which may arise out of the principle of respondeat superior.

On the issue of the operator's incompetence, clearly it is sufficient common law proof that a present condition of unfitness of the operator was actually known to the de-

___

[1] The declaration against McDonough is not suitably worded to permit proof of the common law cause of action. See part 7 of this opinion, as to leave granted for a motion to amend the declaration.

fendant owner of the automobile at the time that he entrusted it to the operator. A defendant automobile owner could be held liable, even aside from the provisions of G. L. c. 90, § 12, on evidence that he lent the vehicle to one who was visibly under the influence of intoxicating liquor (*Leblanc* v. *Pierce Motor Co.* 307 Mass. 535, 538; *Ellsworth* v. *Ludwig,* 140 Ind. App. 437; compare *Adamian* v. *Three Sons, Inc.* 353 Mass. 498, 501) or to one who he knew was suffering from an acute lack of sleep (see *Zarski* v. *Creamer,* 317 Mass. 744, 746–747), or to one who was extremely young and inexperienced (see *Woodman* v. *Haynes,* 289 Mass. 114). Other jurisdictions have held vehicle owners responsible in cases where the owner knew that the operator was subject to epileptic seizures (*Syah* v. *Johnson,* 247 Cal. App. 2d 534; compare *Ellingsgard* v. *Silver,* 352 Mass. 34) or knew that the operator was otherwise unfit by reason of physical or mental disability (*Perin* v. *Peuler,* 373 Mich. 531, 546).

The plaintiff argues that negligence of the vehicle owner may be established by showing actual knowledge by the owner, at the time of the entrustment, of prior instances of negligence, recklessness or lawlessness by the operator. It is conceivable that a sufficient pattern of such prior incidents could be shown in an appropriate case so as to warrant an inference that the operator was an incompetent person.[2]

In such a case it would be necessary to prove both the incompetence of the operator and the owner's knowledge of the incompetence. In the case before us, no evidence of prior incidents of driving misconduct by

[2] The following cases from other jurisdictions hold that incompetence of the operator was sufficiently shown. We express no opinion as to the sufficiency of the evidence in any of these cases. *Laney* v. *Blackburn,* 25 Ala. App. 248 (four car wrecks of son, some of which were reported to father). *Chaney* v. *Duncan,* 194 Ark. 1076 (one prior occasion of son's driving recklessly, while intoxicated, known to father). *Snowhite* v. *State,* 243 Md. 291, 296–300 (repeated intoxication and acts of reckless driving). *Tanis* v. *Eding,* 274 Mich. 288 (other accidents of driver known to defendant). *Linville* v. *Nissen,* 162 N. C. 95 (two accidents of son known to father).

Doran was shown; yet the judge instructed the jury in substance that proof of the operator Doran's reputation as a reckless driver who operated vehicles while under the influence of intoxicating liquor is sufficient proof without more. This was error. Evidence of the driver's reputation for carelessness is not admissible to prove his incompetence in an action against the defendant owner. *Guedon* v. *Rooney,* 160 Ore. 621, 639–640, citing *Young* v. *Fresno Flume & Irr. Co.* 24 Cal. App. 286, and *Park* v. *New York Cent. & Hudson River R. R.* 155 N. Y. 215.

Knowledge of the defendant owner concerning the prior conduct of the operator might well be established by inference.[3] It is possible that the reputation of the operator could be shown to be of such a specific nature, and known in such a particular segment of the community, as to constitute some evidence that the defendant owner had knowledge of the operator's incompetence at the time of the entrustment of the vehicle. *Monahan* v. *Worcester,* 150 Mass. 439, 440. *Carson* v. *Canning,* 180 Mass. 461, 462–463. *Sousa* v. *Irome,* 219 Mass. 273, 276. *E. L. Cheeney Co.* v. *Gates,* 346 F. 2d 197 (5th Cir.). *Vanner* v. *Dalton,* 172 Miss. 183, 186. *Thomasson* v. *Winsett,* 310 S. W. 2d 33 (Ct. App. Mo.). *Guedon* v. *Rooney,* 160 Ore. 621, 642. Compare *Bailey* v. *Simon,* 199 So. 185, 190 (Ct. App. La.).

Evidence of prior incidents which tend to prove incompetence of the operator might be established by appropriate proof of prior criminal convictions, or by testimony of witnesses possessing personal knowledge of the incidents. The actual knowledge of the defendant owner

---

[3] See Restatement 2d: Torts, § 390: "Chattel for Use by Person Known to be Incompetent. One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (To the extent that the rule of the Restatement arguably may be different from the rules we have stated in this opinion, we do not follow the Restatement rule. Specifically, our rules require proof, by inference or otherwise, that the owner had actual knowledge of the driver's incompetence.)

might appropriately be based on information made known to him by others, rather than on personal knowledge. Evidence tending to prove prior incidents, and the defendant owner's knowledge thereof, is not admissible as evidence of the operator's fault in the accident presently in suit, and the defendants are entitled to limiting instructions to that effect. See *Gilman* v. *Eastern R. R.* 13 Allen 433, 444, and *Sousa* v. *Irome,* 219 Mass. 273, 276.

5. Although the preceding discussion has demonstrated beyond doubt that McDonough is entitled to a new trial, we turn now to the errors of the judge in rulings on evidence and the argument of counsel. We add that all of these erroneous rulings were so seriously prejudicial to McDonough that a new trial is required, although the rulings discussed above have already made this necessity clear. In any event, we discuss below the rulings on evidence and argument that are likely to recur at a new trial.

Robert T. Mulcahy, an insurance investigator, was called as a witness by the plaintiff's counsel. He was asked if he had told Sergeant Driscoll of the police that McDonough had said to him that "he would sue the company for one million dollars if they didn't properly represent him." The witness answered, "No." Later Driscoll was called by the plaintiff's counsel and testified that Mulcahy had attributed that statement to McDonough. The plaintiff's counsel offered the testimony of Driscoll "for impeachment of the credibility of the witness Mulcahy" only, and the judge specifically limited the testimony to that issue. Later, however, in his argument to the jury, the plaintiff's counsel cited the alleged statement of McDonough as evidence of McDonough's control of the motor vehicle driven by Doran, and as evidence of McDonough's consciousness of liability for the plaintiff's injuries. All of this evidence, and the argument of the plaintiff's counsel, were received over the objections and exceptions of the defence.

The evidence should not have been admitted and the argument should have been struck. There was no evi-

dence to show that McDonough made the statement since Mulcahy's testimony did not establish that fact. The testimony of Driscoll was hearsay as to that issue. Even if there had been evidence that McDonough spoke the words, they did not constitute an admission. On the issue of control of the vehicle, the fact that he claimed a defence, perhaps as a described insured, would not tend to prove that he had procured insurance. See *Marsh* v. *Beraldi*, 260 Mass. 225, and *Bachand* v. *Vidal*, 328 Mass. 97, 101–102. It is apparent that he was not a named insured on any policy related to this vehicle, since proof of that fact, if true, would be a simple matter of documentary evidence. That the words did not establish consciousness of liability is too plain to require further discussion.

Nor should the testimony of Driscoll have been received even for impeachment purposes. Since the alleged statement of McDonough did not constitute an admission, the testimony of Mulcahy and Driscoll concerned only a collateral matter. If a party cross-examines a witness upon a collateral matter, he must take the answer as it is given; he cannot contradict it, and thus raise an immaterial and foreign issue, of which the other party has no notice and which he cannot be prepared to meet. *Alexander* v. *Kaiser*, 149 Mass. 321, 322. *Fisk* v. *Fisk*, 263 Mass. 34, 36. The application of this rule is particularly appropriate in this case, since it is obvious from an examination of the record that the sole purpose of the plaintiff's counsel in calling Mulcahy to the stand was to establish the collateral matter. The question addressed to Mulcahy, which contained the alleged statement of McDonough, concerned matter of such doubtful admissibility and potential prejudice to McDonough that the plaintiff's counsel should have preliminarily disclosed its contents to the trial judge, out of the hearing of the jury. The question alone, even if excluded, tended to create a false impression that McDonough had insured the vehicle, and that he valued the case at $1,000,000. This line of inquiry constitutes an example, with other illustrations noted later

in this opinion, of this lawyer's tactics in injecting immaterial and unfairly prejudicial elements into the trial of this case.

The judge also was in error in allowing, on the issue of control, evidence relating to a telephone call made by Doran after the accident. Driscoll testified, over defence objections and exceptions, that he heard Doran say over the telephone, "Mr. McDonough? This is Rick Doran. I have had an accident with your Ford. Could you come to the police station, the Scituate police station, and take me out. . . . I am with Sergeant Driscoll." Other testimony of the sergeant stated that McDonough later that day came down to the police station and saw Driscoll there. Nothing was said then concerning ownership of the vehicle. The judge admitted the telephone statement of Doran against McDonough, presumably on the reasoning that there was an admission of ownership by McDonough when he failed to volunteer to Driscoll a denial of ownership. This was error.

It was not shown that Doran was an agent authorized by McDonough to make statements on his behalf. *Cleary* v. *First Natl. Stores Inc.* 291 Mass. 172, 174. *Sherman* v. *Metropolitan Transit Authy.* 345 Mass. 777, 778. Nor was an admission by silence shown, since the statement of Doran was not made in McDonough's presence, as required, and the circumstances otherwise were not appropriate to require a reply by McDonough. See *Commonwealth* v. *Boris,* 317 Mass. 309, 317–318. We are not inclined to extend the scope of the doctrine of admission by silence. *Commonwealth* v. *Boris,* 317 Mass. 309, 317. *Trustees of the Church of the Disciples* v. *Benevolent Fraternity of Unitarian Churches,* 319 Mass. 38, 39. *Refrigeration Discount Corp.* v. *Catino,* 330 Mass. 230, 237.

6. The record shows that the plaintiff's counsel, both in presentation of evidence and in argument, designedly brought immaterial and highly prejudicial matters to the attention of the jury. The unfairness of this approach was exacerbated by the failure of the judge, on defence

objections and motions, to correct or ameliorate the effect of these tactics.

In argument, the plaintiff's counsel made lengthy and inflammatory references to the political stature of McDonough. These references were not relevant to any issue in the case. The argument was a covert appeal to partiality and prejudice which "called for rigorous and emphatic action on the part of the judge" (*London* v. *Bay State St. Ry.* 231 Mass. 480, 485–486) and no such action was forthcoming.

There was some evidence that Doran had with him a bottle of whiskey on the night of the accident, and some time before the accident occurred. There also was evidence that a whiskey bottle was found on the highway near the accident. There was testimony that the bottle as found was empty, and other testimony that it was partially filled with whiskey. The plaintiff's counsel at the trial produced a partly full whiskey bottle, and some of the witnesses answered affirmatively when asked if the bottle in evidence was a fair representation of the one seen on the highway. Many days later in the lengthy trial, the plaintiff's counsel conceded to the judge, in the absence of the jury, that he himself had purchased and prepared the bottle which was in evidence. The significance of the exhibit is clear, in view of the contradictory evidence, in that the jury would probably more readily believe that the bottle on the highway was one discarded by Doran, rather than mere roadside debris, if the bottle contained some whiskey. The judge declined to strike the bottle from evidence or instruct the jury as to the true source of the exhibit. The present contention of the plaintiff's counsel that he informed the jury in his concluding argument as to the source of the bottle is not confirmed by a reading of the transcript of his argument, which discloses only some equivocal remarks concerning the bottle.

In the examination of Ridge, with reference to the witness' having changed his residence from one place to an-

other, the plaintiff's counsel asked him if he had informed the police of his change of address. The witness answered in the negative. The obvious, and totally unwarranted, implication of the question was that the witness was a probationer, a parolee, or was otherwise in difficulty with law enforcement officials. Later, in argument, plaintiff's counsel equated the character of Ridge with that of his "master" McDonough.

The argument of the plaintiff's counsel to the jury far exceeded permissible limits in other respects. We have no wish to place undue limits on the great latitude which is extended to counsel in argument. It is proper for counsel to use analogy, example and hypothesis as an aid to effective and aggressive argument. He may not, however, state in argument facts which are not part of the evidence or the fair inferences from the evidence. See *Commonwealth* v. *Hill*, 145 Mass. 305, 309; *Hart* v. *Morris & Co.* 259 Mass. 211, 214; *Bloom* v. *Town Taxi, Inc.* 336 Mass. 78, 79–80; *Jensen* v. *McEldowney*, 341 Mass. 485, 487–489. The plaintiff's counsel in this case argued, with not the slightest evidence to warrant the contention, that Doran had been drinking whiskey on the afternoon before he borrowed the automobile. Counsel also recited in argument long and detailed imaginary conversations between McDonough and Ridge, and McDonough and Doran, which purported to establish that McDonough owned the automobile and had extended specific permission to Doran to operate the vehicle on the night of the accident. No evidence warranted these recitals. The intent, and probable result, after five weeks of trial, was to impress upon the jury a factual version which was in no respect warranted by the evidence or the fair inferences from the evidence. The argument was improper under long established, and well understood, principles. *O'Neill* v. *Ross*, 250 Mass. 92, 96–97. *National Shawmut Bank* v. *Hallett*, 322 Mass. 596, 601. Again the judge declined to take the emphatic corrective action which was required.

This is not the first case in which this court has found

it necessary to comment upon the overreaching and impermissible trial tactics of this particular lawyer, Mr. Timothy J. McInerney. See *Gardner* v. *State Taxi, Inc.* 336 Mass. 28, *McInerney* v. *Massasoit Greyhound Assn. Inc.* 359 Mass. 339, 348, 351, and *Roddy* v. *Fleischman Distil. Sales Corp.* 360 Mass. 623, 624–628. Such tactics do a disservice to the court, the public, and the litigants. The new trial of this case should be conducted under an unequivocal pre-trial ruling by the trial judge that the evidence and arguments are to be confined to relevant considerations.

7. The plaintiff is to be allowed ninety days after the date of the rescript herein for the filing in the Superior Court of a motion, to be allowed in the discretion of the judge, to amend the declaration for purposes of asserting, in one or more counts, the negligence of McDonough as related to G. L. c. 90, § 12, or the common law, or both.

8. The bill of exceptions is dismissed as to Ridge and Doran and judgments for the plaintiff are to be entered as to the verdicts against Ridge and Doran. If the declaration is seasonably and appropriately amended, by motion allowed by a Superior Court judge, a new trial is to be had against McDonough on all issues, including proof on the issue of whether the tortious conduct of the operator Doran caused the plaintiff's injuries.[4] [*]

*So ordered.*

---

[4] Although judgment has been ordered to be entered against Doran, after a trial in which McDonough participated, the trial was permeated with error affecting all defendants. The fact that Doran failed to pursue his bill of exceptions is not determinative. See *Taylor* v. *Hawkinson,* 47 Cal. 2d 893.

[*] See, however, as to Ridge and Doran, a further opinion of this court, *Leone* v. *Doran, post,* 886. REPORTER.