DAVID DOVNER & another[1] *vs.* WILLIAM EDELMAN. No. 07-P-1482. August 5, 2008. *Negligence,* Motor vehicle, Duty to prevent harm, Causation. *Motor Vehicle,* Ownership, Theft, Permission to operate, Entrustment.

This is a negligence action arising out of a car accident. The plaintiffs, David and Susan Dovner, appeal from a summary judgment (and an order denying reconsideration of that judgment) dismissing their claims against the defendant, William Edelman. Edelman owned the car that hit the plaintiffs;

---

[1]Susan Dovner.

Elliott Chefitz, a minor, was operating the car. Edelman kept the primary key to the car on his key chain. He kept a spare key in his briefcase, and a third key on a hook in the mud room between his house and his garage.

Edelman, as well as Chefitz, often attended temple services on Friday and on Saturday near Edelman's home. Along with many other members attending services, Edelman routinely drove his car to the temple on Friday, attended services, walked home that evening, walked back to the temple to attend services Saturday morning, and then retrieved his car and drove it home at the conclusion of services Saturday evening. The net result was that Edelman routinely left his car in the temple's parking lot from sundown on Friday until Saturday evening. The routine accommodated a religious prohibition on driving from sundown on Friday until sundown on Saturday. Because Saturday services took the whole day, Edelman sometimes invited other members, including Chefitz, back to his house for lunch.

Sometime in late May, 2003, Edelman noticed that the key kept on the hook in his mud room was missing, but he apparently did not think anything about it and did not notify the police. Unbeknownst to Edelman, Chefitz was taking Edelman's car while it was parked at the temple, and going for "joyrides," having obtained the key to Edelman's car when he liberated it from its hook in Edelman's mud room. On at least three occasions, Chefitz filled the car with gasoline, purchased with a credit card Edelman kept in the glove compartment. Those charges showed up on Edelman's credit card statement showing the date, but not the time, of the purchases. Edelman apparently did not notice the charges. On Chefitz's final "joyride," in late June, 2003, he drove Edelman's car into the vehicle occupied by the plaintiffs.

The plaintiffs argue that because Edelman knew his spare key had been "stolen"[2] and he either knew or should have known unauthorized charges for gasoline were being made to his credit card, Edelman had a duty to secure his car by, for example, changing the locks on the car, reporting the stolen key to the police, or refusing to drive the car and leaving it in his locked garage. We disagree.

The Superior Court judge, on the parties' cross motions for summary judgment, generally held that Edelman could not be found liable for negligence because he owed no duty to the plaintiffs. In so ruling, the judge observed that:

> "First, Edelman was one of many congregants who parked at the synagogue from Friday night to Saturday night, the duration of Shabbat. Second, Edelman did not discover that the spare key to his Volvo was missing for several months since he only depended on the two car keys that he used on a routine basis. Third, Chefitz did nothing to the vehicle to cause Edelman to suspect that it was being stolen on a regular basis. Finally, Edelman could not have been alerted that Chefitz was using his car impermissibly from his credit card statements, because the entries

[2]Although the plaintiffs argue the point using the word "stolen," nothing in the record suggests that Edelman knew (or, indeed, ever suspected) that his spare key had been stolen. Instead, Edelman discovered that the spare key had gone "missing." Given that the key was kept at his home, and that there is no suggestion of a break-in or that anything else was missing, it fairly cannot be inferred that Edelman knew or should have known that his key had been stolen.

detailing Chefitz's credit card purchases at the gas station were mixed in with the entries stating Edelman's own gasoline charges. Consequently, this court finds that Edelman could not have foreseen that his parking at the synagogue during Shabbat would result in the [Dovners'] injury, and therefore owed no duty to them. . . . Sound social policy also favors this finding; to conclude that a duty exists in these circumstances would require every person to have omniscient powers in order to guard against any consequence that might arise out of every act or omission, for fear of breaching a duty to others."

Whether this case is analyzed from a duty or causation perspective, the result is correct. In general, "there is no duty to protect others from the criminal or wrongful activities of third persons." *Mullins* v. *Pine Manor College*, 389 Mass. 47, 50 (1983). Of course, such a duty may arise where "existing social values and customs" impose such a duty. *Id.* at 51 ("We think it can be said with confidence that colleges of ordinary prudence customarily exercise care to protect the well-being of their resident students, including seeking to protect them against the criminal acts of third parties"). However, there are no such "existing social values and customs" in operation here. Edelman and the plaintiffs have no special relationship. Edelman was not operating the car at the time, and Chefitz did not have Edelman's permission to drive it.

A duty of reasonable care also may arise when special circumstances would suggest to a prudent person that failure to act in a particular way might foreseeably subject third persons to an unreasonable risk of injury. See *Jupin* v. *Kask*, 447 Mass. 141, 146-156 (2006) (where homeowner knew that individual had history of violence and mental instability and had unsupervised access to guns stored on property, homeowner could be found liable to injured party for negligent failure to secure weapons). But there simply is not enough here. The plaintiffs make no claim, for example, that Edelman in fact knew that Chefitz was using the car or otherwise allowed him to drive it, so there is no negligent entrustment issue. Contrast *Mitchell* v. *Hastings & Koch Enterprises, Inc.*, 38 Mass. App. Ct. 271, 276-278 (1995). Neither do the plaintiffs claim that Edelman essentially encouraged Chefitz to "joyride" in Edelman's car by, for example, leaving the keys in the ignition of his unlocked and unattended car. Compare *Poskus* v. *Lombardo's of Randolph, Inc.*, 423 Mass. 637, 639-640 (1996), and cases cited.

For these reasons, the judge correctly granted the motion for summary judgment.

*Judgment affirmed.*
*Order denying motion for recon-*
*sideration affirmed.*

*Donald J. Hubbard* for the plaintiffs.
*Stephen M.A. Woodworth* for the defendant.